## LETTIE C. BOOKER

*v.*

## JENNIE BOOKER *et al.*

*Opinion filed April 20, 1904.*

1. WITNESSES—*when husband is competent to testify against wife.* In litigation respecting the wife's separate property and in which she would, if unmarried, be the defendant, the husband is competent to testify for or against her, under the exceptions to section 5 of the Evidence act.

2. VENDOR AND PURCHASER—*purchasers are protected against unrecorded deeds.* A purchaser from the holder of the record title is entitled to protection against an unrecorded deed in the absence of notice, actual or constructive, of the existence of such deed.

3. NOTICE—*when record of mortgage is not constructive notice.* The record of a mortgage upon the land, given by a person not in possession, is not constructive notice of an unrecorded deed from the holder of the record title to the mortgagor, where the former does not appear to be a party to the mortgage. (*Ogden* v. *Haven,* 24 Ill. 57, and *Morrison* v. *Morrison,* 140 id. 560, distinguished.)

4. SAME—*inadequacy of consideration not constructive notice of prior unrecorded deed.* Inadequacy of the consideration paid for land is not of itself constructive notice to the purchaser of the existence of a prior unrecorded deed from her grantor to a third party.

5. SAME—*when notice to husband is not chargeable to wife.* Notice by a husband of an unrecorded deed to his former wife is not chargeable to his second wife, whom he induced to purchase the property, where it is clear that in withholding such deed from record as well as in concealing the facts from his second wife he was actuated by a fraudulent and selfish purpose.

6. LACHES—*when delay in bringing suit is not excused.* A delay of five years by complainants before attacking defendant's title, after the latter took open and visible possession of the land under a recorded deed, is not excused by the fact that a third party falsely told them the defendant had no deed.

7. SAME—*when laches will bar relief.* Unexcused delay by complainants in asserting their rights under an unrecorded deed to their mother until twelve years after her death, she never having been in possession, and for five years after the defendant took possession under a recorded deed from the holder of the record title, will bar relief.

APPEAL from the Circuit Court of Shelby county; the Hon. S. L. DWIGHT, Judge, presiding.

208—34

This is an appeal from a decree of the circuit court of Shelby county granting the relief prayed in a bill filed by appellees against appellant.

The allegations of the bill were, in substance, that on February 25, 1882, a certain forty-acre tract of land was sold at an administrator's sale, under a decree of the county court of Shelby county, to pay the debts of one William Davis, deceased; that prior to the sale Nancy Booker, who was then the second wife of John W. Booker, employed T. F. Dove, a lawyer at Shelbyville, in said county, to purchase the land in his own name for her; that said attorney made the purchase for $1020, taking a deed to himself, and two days later conveyed the land to said Nancy, which latter deed was never filed for record but was left in the custody of the grantor, Dove; that Nancy Booker borrowed at the same time $800 from one Minerva Cooper with which to pay a part of the purchase money, giving her note therefor, due in five years, secured by a mortgage on said land, which was duly recorded, and that she afterwards paid all of that mortgage indebtedness except the sum of $400; that after the death of Nancy Booker, on March 20, 1894, and after the marriage of John W. Booker with his present wife, Lettie C. Booker, the latter, by collusion with her husband, fraudulently procured and obtained the execution and delivery of another deed from said Dove to the land, who, through and by means of the fraudulent collusion and deceitful arts of the said Lettie C. and John W. Booker, executed to Lettie C. Booker a second deed, which she fraudulently filed for record in the recorder's office of the said county; that at the time of the execution of the said deed Lettie C. and her husband, John W. Booker, well knew that the land was purchased by Nancy Booker in her lifetime, and that she had paid to said Dove the full amount of the purchase price, and that he (Dove) had made a deed to her, and that she had executed the said mortgage to Minerva Cooper, and well knew that the deed

executed by the said Dove to Lettie C. was procured and obtained in fraud of the rights of the children of the said Nancy Booker; that after the making of the last mentioned deed Lettie C. borrowed $400 from one Smith, securing the same by a mortgage on the land, dated March 20, 1894, which mortgage was duly recorded, and that the said John W. Booker had fully paid said mortgage indebtedness and that said Lettie C. has never paid any part of the same. It is then alleged that whatever title Lettie C. Booker holds to the land is fraudulent and should be declared null and void, and that her title should be decreed to be held in favor of complainants, and the trust executed by decree and partition of the land made. The bill offers to reimburse Lettie C. for any sums due her.

John W. Booker, the husband, and one Lincoln Booker, a minor son of Lettie C. and John W. Booker, together with Lettie C. Booker, were made parties defendant. John W. made no answer to the bill and it was taken as confessed against him. Lincoln Booker answered by his guardian *ad litem*, and Lettie C. filed her answer denying all knowledge of the execution of the alleged deed from Dove to Nancy Booker; averring that at the time she purchased the land and obtained her deed from Dove she inquired particularly of him, as well as of her co-defendant, (her husband,) John W. Booker, and others, as to the rights and ownership of Dove and of his power to convey the same, and was assured by them that he (Dove) was the absolute owner of the land and had complete right to convey the same, and that she never heard that right questioned or disputed until the filing of the present bill; that she has not now, and never had, any knowledge or information whatever of any conveyance of the land by Dove to Nancy Booker, or of any lien executed by said Nancy to Minerva Cooper, or of any mortgage by the former to the latter, or the payment of such indebtedness by said Nancy; that she is an utter stranger

to all such matters and denies the same, but admits that if any deed was ever made to said Nancy Booker it was never filed for record. She denies all fraud and collusion on her part in obtaining her deed from Dove, or that she fraudulently filed the same for record. She admits that on March 20, 1894, she borrowed $400 from one Smith and gave a mortgage upon the land to secure the same, but denies that John W. Booker paid any part of said indebtedness, and avers that she paid the money so borrowed to Dove as part of the purchase price, and subsequently paid the entire amount so borrowed, to said Smith. She admits that she holds title to the land, and denies that she holds the same in fraud of complainants' rights or that there is any trust to be executed by her. She then avers that at the time of her marriage to John W. Booker she owned a small amount of property in her own right, which he, by certain devices and schemes, attempted to obtain, and represented to her, among other things, that said Dove was the absolute owner of the land in question and that it could be bought to good advantage, and that she, yielding to his solicitations, bought the same in good faith, for a valuable consideration, without notice, etc.; that she at the time procured an abstract of title to the land, which showed that T. F. Dove was the owner of the same, by which she was enabled to make said mortgage loan from Smith. She further sets up that prior to the death of the said Nancy Booker the land had been sold for taxes and a tax title perfected in Dove on September 12, 1889, and the deed duly recorded; that immediately upon receiving her deed from Dove she entered into possession of the land, and has ever since been and still is in the open, exclusive and actual possession of the same under the claim and belief that she was and is the absolute owner thereof, all of which has all the time been known to complainants; that she has paid all the taxes assessed thereon for each and every year since, and including the year 1894, and is

now the sole owner thereof.   She charges that her co-
defendant, John W. Booker, is only nominally a defend-
ant, he causing himself to be made a defendant, etc.   She
sets up and relies upon the *laches* of said Nancy Booker,
and the complainants claiming through or under her, as
a bar to all right of recovery in the present action.

To the answer of Lettie C. Booker a general replica-
tion was filed and the cause heard upon oral testimony
taken in open court.   The decree finds the issues for the
complainants, and orders the deed from T. F. Dove to
Lettie C. Booker set aside and declared null and void,
but that she have a first lien upon the land for $574.50,
and that partition be made subject to said lien.   It then
finds the interests of the respective parties complainant,
and of the defendants John W. Booker and the infant,
Lincoln Booker, the said Lincoln Booker and John W.
Booker deriving their interests through the death of one
of the sons of Nancy Booker.   Other facts necessary to
a decision of the case appear from the following opinion.

WALTER C. HEADEN, for appellant.

W. C. KELLEY, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The undisputed evidence in the case is, that prior to
February 25, 1882, John W. Booker procured T. F. Dove
to purchase the land in question for Nancy Booker, and
that the administrator's deed to Dove, his quit-claim deed
to Nancy Booker and her mortgage to Minerva Cooper
were executed as alleged in the bill.   The deed to Nancy
was withheld from record by the directions of John W.
Booker for some ulterior purpose which he does not ex-
plain.   There is no dispute as to the fact of its delivery,
and that it was the same day returned to Dove and re-
mained in his possession until the hearing of the present
cause.   It is not claimed that Nancy Booker was at any

time in possession of the land. On March 20, 1894, T. F. Dove and wife executed and delivered to the appellant, Lettie C. Booker, a quit-claim deed for the same land, which was recorded two days later. Prior to the execution of the latter deed the land had been sold for taxes and a tax deed executed therefor to one William W. Hess, dated June 8, 1888, and filed for record on the day of its date, and on September 12, 1889, Hess and wife by quit-claim deed conveyed the same to Dove in consideration of $75, and that deed was also duly filed for record March 22, 1894. There also appears to have been a tax deed to the same land executed to one Michael Montgomery, dated February 2, 1892, and filed for record the same day, but, so far as the evidence in this record shows, that title is outstanding. On March 20, 1894, the date of the deed from Dove and wife to the appellant, she borrowed of one D. C. Smith, through one John D. Millar, $400, for which she gave her promissory note and executed a mortgage upon the land to secure the same, due five years from date, with ten coupon interest notes for $14 each, due semi-annually, and that mortgage was recorded March 22, 1894. In order to obtain said loan she procured an abstract of title to the land, for which she paid $9.50, and she also paid Millar $10 commission. The proceeds of the Smith loan were paid to Dove in consideration of the deed by him to her. Immediately upon receiving her deed she entered into and has remained in possession of the land from that time to the present. She has also paid the taxes thereon for the years 1894 to 1902, inclusive. Nancy Booker, through whom complainants claim title, died March 8, 1887, leaving two children: Jennie Booker, one of the complainants, born in 1878, and John Wesley Booker, who died before reaching his majority, and unmarried, about the year 1898, and his alleged interest in the land in question descended to his father, the said John W. Booker, his sister, Jennie Booker, the complainants Finley and Elbridge Booker, his half-brothers

by a former marriage of his father, and his infant half-brother, defendant Lincoln Booker. At the time the bill was filed the half-brothers Finley and Elbridge Booker were, respectively, about thirty-two and thirty-four years of age. The former has lived in the State of Kansas for the past three or four years, and the other complainants and the defendant John W. Booker have at all times re-sided in Shelby county, this State, in which the land is located.

Without reference to the tax title which he held at the time of his conveyance to the appellant, the title of record to said land was in T. F. Dove, and it is admitted by counsel for the complainants that unless the evidence shows that the appellant took her deed with actual or constructive notice of her grantor's prior conveyance to Nancy Booker, her title must prevail,—and such is un-questionably the law of this State. As was said in *Grun-dies* v. *Reid*, 107 Ill. 304: "Our law protects the purchasers of real estate in their purchases of the same as the title appears of record, unless there be notice of something to the contrary." Many later decisions of this court are to the same effect.

The only evidence in this record tending to prove actual notice to the appellant of the unrecorded deed to Nancy Booker is the testimony of John W. Booker, nomi-nally her co-defendant and her husband. It is insisted on behalf of appellant that he was incompetent to testify for or against his wife, Lettie C. Booker. The litigation is "concerning the separate property of the wife," and the action is one "in which she would, if unmarried, be defendant." Therefore, under the exceptions to section 5 of chapter 51, (2 Starr & Cur. Stat. p. 1837,) he was com-petent to testify for or against her. *McNail* v. *Ziegler*, 68 Ill. 224; *Pain* v. *Farson*, 179 id. 185, and cases cited; *Cassem* v. *Heustis*, 201 id. 208.

The credibility of the testimony of the said John W. Booker presents a different question. Though joined with

his wife as a defendant he was not only hostile to her in interest, but so manifested his hatred and prejudice against her upon the witness stand that he was repeatedly rebuked by the court and admonished by his own counsel, and it is admitted now that no excuse can be offered for his misconduct as a witness. His testimony is to the effect that he told his wife all about the prior deed and that she took her title with actual knowledge that Dove had previously conveyed the land, but in view of his unjustifiable conduct and his manifestation of bias against the appellant and partiality in favor of the complainants we cannot receive his testimony without at least some grains of allowance. He had not lived with his wife for several years, and she squarely contradicted him as to his having told her anything whatever about the condition of the title to the land or the deed to his former wife, Nancy, and she swears, without qualification, that she had no knowledge or information from him, or any one else, that the title was in any way defective. He also swore positively that he himself paid off the Smith mortgage. He said: "I furnished every dollar of the money myself to pay off the Smith loan." The appellant swore directly to the contrary,—that she paid that entire indebtedness,—and in that she was corroborated by the testimony of John D. Millar, to whom the money was paid. On this proposition the chancellor must have disbelieved John W. Booker and given credit to the appellant, otherwise she would not have been given a first lien on the land for the amount of that loan and interest. She further testified that at the time she took her deed from Dove she inquired of him whether the title was good, and was told that it was, and she gives in detail a conversation with him on that subject, to the effect that she was getting a perfect title, in which she was corroborated by her sister, who was present and heard the conversation. It is true that Dove did not remember the conversation. He testified: "I don't remem-

ber seeing Lettie C. Booker about the time I made the deed to her. I don't remember the circumstance of Lettie C. Booker and her sister, Sylvia, coming to my office to inquire about the title to the land. I cannot say they didn't, because I have no recollection of it whatever. I don't remember any conversation with her until after suit was brought." When it is remembered that the conversation took place several years prior to his attention being called to it, and in all probability being one of many similar transactions which occur in an attorney's office, it cannot be fairly said that his evidence is at all contrary to or inconsistent with that of appellant and her sister. It is true, the consideration paid for the land by appellant was much less than,—perhaps not to exceed,—one-third its actual value; and while inadequacy of consideration is not, of itself, a ground for relief, as contended by counsel for appellees, it is nevertheless a circumstance to be considered in determining the good faith of the purchaser. It cannot, however, be fairly said in this case, that because the appellant purchased the'land for a grossly inadequate price she is chargeable with knowledge of the prior unrecorded deed, because, upon the same line of reasoning, it could be said she would not have paid $500 or more for a title which she knew to be absolutely worthless. She testified that she knew that she was purchasing the forty acres for less than it was worth, and was induced to buy it for that very reason. To hold that because she paid an inadequate consideration for the land she ought therefore to be held chargeable with notice of the defect in her title, would be to authorize the setting aside of every title obtained for a grossly inadequate price, which the law will not permit. The fact that the land had been sold for taxes and two tax deeds executed therefor must also be considered as affecting the market value of the land.

We have endeavored to carefully and impartially consider the testimony in this record, and have been forced

to the conclusion that the complainants failed to prove by that preponderance of testimony which the law imposes upon them, that the appellant had actual notice of the execution of the deed to Nancy Booker.

It is, however, earnestly insisted that the facts and circumstances surrounding the transaction and parties at the time·of the execution of appellant's deed are sufficient, in law, to charge her with constructive notice of the deed to Nancy, and upon this ground, in all probability, the learned chancellor based his finding and decree. On this branch of the case it is first contended that the record of the mortgage executed by Nancy Booker to Minerva Cooper in January, 1882, was, in law, notice to the appellant of the unrecorded deed from T. F. Dove to said Nancy, and reliance in support of this position is placed upon the cases of *Ogden* v. *Haven,* 24 Ill. 57, and *Morrison* v. *Morrison,* 140 id. 560. We do not regard those cases in point. In the *Ogden case,* the mortgage from Tooley to Haven, the former owner, was duly recorded, and it was said (p. 60): "We think the presumption of fact, as well as of law, is that Ogden at that time saw the record of that mortgage. Finding the title in fee in Haven, and subsequently a mortgage to him from a third person, was well calculated to excite suspicion that Haven must have conveyed the land to Tooley by some conveyance not of record,"—and it was held that that mortgage was sufficient to arouse the suspicion of the subsequent purchaser. But the case did not turn upon that fact alone. There was there abundant evidence of actual·notice. In the later case of *Morrison* v. *Morrison,* *supra,* the mortgage, which was held to be constructive notice of the prior unrecorded deed, was given to the owner of the fee, as shown by the record, and we said (p. 576): "If plaintiff in error made such examination, [*i. e.*, of the record,] she found, or if she had made examination she would have found, a title in fee in her grantor, and a subsequent mortgage on part of the north-west

quarter of section 9, made by her brother, while in possession, to Abend, as trustee, to secure a promissory note made by her brother and payable to the order of her grantor. It would seem that notice of the record of such a mortgage is sufficient to put a purchaser on inquiry as to any unrecorded conveyance,"—citing *Ogden* v. *Haven.* The facts here are entirely different. The mortgage which it is claimed should, in law, charge the appellant with constructive notice of the unrecorded deed was not executed to her grantor, but to a third party. It cannot be seriously contended that in every case where the records show a conveyance from one party to another, third persons are chargeable with notice that the grantor had a title from some other person. To so hold would render nugatory the statute relating to the registration of deeds of conveyance.

In *St. John* v. *Conger*, 40 Ill. 535, the action was ejectment, in which the plaintiff claimed title through a deed from one McNemony to Peter H. Schenk, improperly recorded in Madison county, the land being situated in Knox county. There was a mortgage from McNemony to Schenk, properly recorded, and a deed from Schenk to Whittemore, and a chain of conveyance from Whittemore to the plaintiff. The original deed from McNemony to Schenk had never been recorded in Knox county. The defendant claimed under a deed from the heirs of McNemony to one Lancaster, duly recorded. A judgment in favor of the plaintiff and against the defendant was reversed by this court, and it was said (p. 537): "It is also urged that the subsequent deed from Schenk to Whittemore should have put the defendant, and those under whom he claims, upon inquiry as to whatever title Schenk had. This proposition, in effect, is, that if a person has made a deed of a tract of land having no recorded title, he must nevertheless be supposed to have some title, and subsequent purchasers must take notice of whatever title he had. Much as registry laws have been frittered

away by the doctrine of putting parties upon inquiry, we do not think any court has ever gone to the extent of adopting this rule. It would substantially defeat the object of registry laws. Their object is to provide a public record which shall furnish to all persons interested authentic information as to titles to real estate, and enable them to act on the information thus acquired. This rule would require a person purchasing from one who has the title on record, to take subject to the unrecorded deeds of persons claiming under a chain of title having no connection of record with the true source of title. If such purchaser is to be held to notice of such a chain of title at all, he has the right to presume, in the absence of any other information, that whatever title the persons claiming under such chain have, is on record, as the law requires it to be, and that they have no title if the record shows none. Here the record shows that Schenk had a mortgage from the owner, and when the defendant purchased he had a right to presume the grantees under Schenk had acquired only his interest as mortgagee. That was all the record disclosed, and any other construction would make the record a snare." The *Ogden case* is then referred to and distinguished.

In *Kerfoot* v. *Cronin*, 105 Ill. 609, where A, in whom the record showed no title, made a deed of trust to B for certain real estate, which was recorded, and which recited that it was given to secure two notes of the grantor to C, in whom the record of deed showed the title for the purchase money of the property, and C endorsed and sold the notes, and after the record of the trust deed sold and conveyed the premises to innocent parties for value, who had no knowledge of any prior conveyance by him to A, or of the deed from A to B, or the recitals therein, it was insisted that the record of the deed from A to B was notice to such subsequent purchaser from C of the existence of the deed or of its recitals, but we held the contrary, on the ground that both A and B were strang-

ers to the chain of title acquired by the purchasers, and we said (p. 617): "The principle contended for by appellant's counsel would, as we conceive, require every record that might possibly affect real estate to be thoroughly examined before a party could be protected in taking a title to or lien upon real estate, the expense and burden of which would practically put an end to all transactions of that kind. The law imposes no such burden. In the present instance the defendants were only required, in the absence of actual notice, to see whether the records showed any, and what, deeds by or judgments against Walker. They were not required to run through with the alphabet, and see if, by possibility, in some deed, no matter by or to whom, it is mentioned that the grantee is a trustee for Walker and that the deed is made to secure the payment of the purchase money."

We are unable to perceive upon what principle the appellant was chargeable with notice that Dove had conveyed the title to Nancy Booker because of her mortgage to Mrs. Cooper, and hold that the record of that mortgage was not, as a matter of law, sufficient to arouse her suspicion or put her upon inquiry.

Another position insisted upon by counsel for appellees is, that John W. Booker, in the purchase of the land by Lettie C. from Dove, was her agent, and that she is chargeable with notice of the facts known to him. In the first place, we do not think the evidence shows that he was her agent in that transaction. He was, at most, nothing more than a mere messenger. (*Doyle* v. *Teas*, 4 Scam. 202.) Generally, in order to create an agency there must be an appointment of the agent by the principal and an acceptance of such appointment. The agency may be implied as well as expressed, but the proof in either case must be clear and satisfactory in order to bind the principal. It is also true, as a general proposition, that notice to the agent of facts learned by him while actually engaged in the business of his principal

is notice to the principal. Notice to the agent to be notice to the principal must, as a general rule, be given to the former while acting in the course of his employment. An exception to the rule, however, is, that the principal may be bound by knowledge of his agent obtained in a former transaction,—that is, one not connected with his employment,—provided the knowledge is so definite as that it is, or must be presumed to have been, present in the agent's mind and memory at the time of the performance of his duties for the principal. These rules are based upon the presumption that the agent has acquired knowledge which it is his duty to impart to his principal and upon the presumption that he has performed or will perform that duty, and hence, even where the agency is clearly established and his knowledge sufficiently proven, whenever it appears that the agent has a motive or interest in concealing the fact from his principal, the latter will not be bound. No one can read the evidence in this record without reaching the conclusion that John W. Booker had a fraudulent and selfish purpose in keeping the deed to his wife, Nancy, off of the records of the county, and also in his dealings with his present wife. If he acted as her agent it is clear that he was not seeking or desiring to protect her interests. In other words, the presumption that he would discharge his duty by disclosing to his wife the facts known to him is completely overcome by his conduct and personal interest in the matter. To say that she should be chargeable with the knowledge obtained by John W. Booker of the unrecorded deed in 1882, not communicated to her, is, it seems to us, unreasonable and grossly unjust.

We are further of the opinion that under the facts of this case the right of action in the complainants and the defendant John W. Booker is clearly barred both by the *laches* of Nancy Booker and those claiming under her. She obtained her deed in 1882. She died in 1887, some five years after she obtained the deed. The appellant

obtained her deed in 1894, and immediately took possession of the premises and has remained in such possession to the present time, paying all taxes assessed thereon. The complainants, except Elbridge Booker, have resided in the same county in which the land is situated during all this time, and he has only been absent three or four years. This bill was not filed until 1899,—five years after the appellant placed her deed upon record and entered into possession of the land. Under the repeated decisions of this court this delay, unexplained, is such *laches* as will defeat the right of recovery. In *Howe* v. *South Park Comrs.* 119 Ill. 101, we said (p. 117): "The doctrine of *laches*, as understood by the court, has been often declared by its previous decisions, (citing cases.) The principle that lies at the foundation of all the cases in this court on this subject is, the party who challenges the title of his adversary to real property must be diligent in discovering that which will avoid the title or render it invalid, and diligent in his application for relief. Unreasonable delay, not explained by equitable circumstances, has always been declared evidence of acquiescence, and will bar relief." The only pretense of an excuse for the delay in this case is that the complainants were kept in ignorance of the facts by the false representations to them of John W. Booker, their father. He says: "I told this falsehood about this transaction to all my children. I have said to each of them,—I will not say at one time,—but I was asked this question, 'Is it true that Lettie has a deed to this land?' and I said, 'No.' I repeatedly said that. I intentionally and willfully made the statement. I deceived my children. I kept up that course until they found out better. I don't know whether they caught me in the lie or not, but it was a lie," etc. It can scarcely be seriously contended that such statements, if they were in fact made, would be a sufficient reason for the delay. The complainants themselves make no explanation whatever—in fact did not testify. Appel-

lant's deed to the land was a matter of public record, and she was in the open, exclusive possession of the same. Those seeking to challenge her title were bound to take notice of her claim and act with reasonable diligence. They had no right to rely on the false statement of their father that she had no deed.

On the whole record we are convinced that the court below was in error in granting the prayer of complainants' bill, and its decree will accordingly be reversed and the cause remanded, with directions to dismiss the bill.

*Reversed and remanded.*