McKEY & POAGUE, INC., *et al.*, Plaintiffs-Appellees, *v.* RONALD E. STACKLER, Director of the Department of Registration and Education, *et al.*, Defendants-Appellants.

First District (5th Division)   No. 76-1158

Opinion filed April 14, 1978.—Modified on denial of rehearing August 25, 1978.

William J. Scott, Attorney General, of Chicago (Gregory G. Lawton, Assistant Attorney General, of counsel), for appellants.

Coffied, Ungaretti, Harris & Slavin, of Chicago (Philip C. Stahl and James L. McCabe, of counsel), for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs brought this action under the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*) to review a final administrative order entered by the Director. The order suspended plaintiffs' licenses to act as real estate brokers and salesmen pursuant to the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1971, ch. 114½, par. 1 *et seq.*), for practicing racial discrimination in the rental of an apartment. The circuit court reversed the decision of the Director holding that plaintiffs' conduct did not fall within the purview of the Act. On appeal defendants contend that the Director's order should be reinstated.

The Department's amended complaint charged plaintiffs with violating section 8(e), subsections 1, 3, 11, 14 and 17 of the 1971 Act (Ill. Rev. Stat. 1971, ch. 114½, par. 8(e), subpars. 1, 3, 11, 14 and 17), and Rule VII of the Rules and Regulations for the Administration of the 1971 Act.

Section 8(e), subsections 1, 3, 11, 14 and 17 provide:

"8. The Department * * * may suspend * * * any certificate of registration * * *

(e) Where the registrant * * * is found guilty of:

(1) Making any substantial misrepresentation, or untruthful advertising,

\* \* \*

3. Pursuing a continued and flagrant course of misrepresentation or the making of false promises through agents or salesmen or advertising or otherwise,

\* \* \*

11. Having demonstrated unworthiness or incompetency to act as a real estate broker or salesman in such manner as to safeguard the interests of the public,

\* \* \*

14. Any other conduct, whether of the same or a different character from that hereinbefore specified which constitutes dishonest dealing,

\* \* \*

17. Disregarding or violating any provision of this Act, or the published rules or regulations promulgated by the Department to enforce this Act."

Rule VII provides:

"RULE VII-DISCRIMINATION PROHIBITED

(1) No registrant shall enter into a listing agreement which prohibits the sale or rental of real estate to any person because of race, color, creed, religion, or national origin.

(2) No registrant shall act or undertake to act as a real estate broker or real estate salesman with respect to any property the disposition of which is prohibited to any person because of race, color, creed, religion, or national origin. Promulgated pursuant to Ill. Rev. Stat. ch. 114½, par. 8(e), par. (17), December 21, 1970."

On July 15, 1975, the Department's Real Estate Examining Committee held a hearing at which the following pertinent facts were adduced.

For the Department:

*Marc Aurele Jeanty*

He is a black Haitian citizen working here as an analyst for Johnson and Johnson. On February 13, 1973, he spoke with Mrs. Migely, an employee of McKey & Poague at the Crestline Arms Apartments. He informed her he was looking for an apartment for himself and his brother, Maxence. After viewing one of the apartments they submitted an application for a lease, together with a $50 deposit. About a week later they received a call informing them that their application had been rejected because the owner refused to rent to single men. Mrs. Migely had not previously indicated that this was a company policy. Shortly thereafter they received a letter of confirmation from George M. Hiles written on McKey & Poague stationery.

As a result of this incident, he and Maxence filed a Federal lawsuit.

(*Jeanty v. McKey & Poague, Inc.* (7th Cir. 1974), 496 F.2d 1119.)
Eventually they settled this case for $5,000.

*Lyle and Donald Otto*

They are white. On March 9 or 10, 1973, they submitted to Mrs. Migely applications for Apartment 107 in Crestline. She accepted their application and they moved in on March 12, 1973. Shortly thereafter they received a lease. E. F. Migely signed the lease as agent of Presbitero & Sons and McKey & Poague.

About two weeks after moving in, Eugene Migely informed them that their lease had been rejected by Presbitero because they were single men and that they would have to move. McKey & Poague rented them a "lot nicer" two-bedroom apartment for $10 more per month. It also paid their moving costs.

*John Woltjen*

He is white and an investigator for the leadership counsel for Metropolitan Open Communities, which investigates complaints of discrimination in the sale and rental of housing. On March 12, 1973, McKey & Poague approved an application for a lease submitted by him and a white co-worker, David Schucker, for Crestline. After learning on March 23, 1973 that he was investigating for the Jeantys, Hiles rescinded the approval of their application.

For plaintiffs:

*Helen Mary Migely*

She is the wife of Eugene Migely and is employed by McKey & Poague at Crestline. If someone inquired about an apartment she would tell the inquirer what was available, show the apartment, take an application and collect a deposit. She would deliver the application to Presbitero which made the decision to accept or reject each applicant. She did not participate in the decision. The Jeantys' and Ottos' applications were handled in this manner.

On cross-examination she stated that from time to time depending upon the vacancy rate and the trouble Presbitero was having with single men, she received guidelines from McKey & Poague about renting to single men. However, she does not recall if a policy against single men was in effect when Jeantys applied. She admitted that a number of single men lived in the eight buildings comprising the Crestline apartments. Although there were no black Americans in the buildings, Indians, Pakistanis, Iranians, Chinese and Japanese resided there.

*George Hiles on his own behalf*

He is the real estate property manager and assistant vice-president of the McKey & Poague office located on South Western Avenue. Presbitero and Sons, Inc., owns Crestline and McKey & Poague is required to submit all applications for apartments in Crestline to Presbitero. His office merely

views an application for completeness and passes it on to Presbitero for approval. Accordingly, he had nothing to do with either the rejection of the Jeantys' application or the acceptance of the Ottos' application. Eugene Migely told him to refund Jeantys' deposit because Presbitero had decided it no longer was accepting applications from single men.

Presbitero retained strict control over Crestline. McKey & Poague only advised Presbitero on rental value and found applicants. Presbitero paid all bills on the building except the water bill.

On cross-examination he acknowledged that McKey & Poague did not receive specific guidelines from Presbitero about renting to single men. Rather, they submitted each application for approval regardless of the reason given them for a prior refusal.

*Eugene F. Migely, on his own behalf*

In early 1973 he was vice-president of McKey & Poague working out of the Western Avenue office. He corroborated Hiles's testimony that Presbitero approved all applications for apartments in Crestline. He submitted Jeantys' application to Jerry Presbitero, who told him he was rejecting it because the Jeantys were single men. He in turn told Hiles to notify Jeantys. Even though Jeantys had been rejected because they were single men in accordance with Presbitero's wishes, he submitted the Ottos' application to Jerry Presbitero, who accepted it. McKey & Poague took no part in the decision to move the Ottos. He received instructions that Jeantys would receive Apartment 107 as a result of a lawsuit. He did not tell the Ottos they must move because they were single. Rather, he told them they must move as a result of a court order. Presbitero also made the decision to reject Woltjen's and Schucker's application after learning they were investigators who were not sincere in their application.

On cross-examination he stated that McKey & Poague's clients differ on whether they want approval over applications. Presbitero maintains strict control over their building.

He also stated that he never felt race was a factor in Presbitero's decisions to reject the Jeantys while accepting the Ottos. People of many different nationalities reside in the eight buildings comprising Crestline.

*Merrill Ahrens*

He is vice-president and director of management for McKey & Poague. Each of McKey & Poague's offices display a poster containing the antidiscrimination laws. Each employee when he begins employment signs an agreement to abide by the fair housing laws.

After the litigation involving Jeantys ended, McKey & Poague ceased to do business with Presbitero. Of the 9,000 to 10,000 apartments managed by McKey & Poague, 50% to 60% are occupied by blacks.

At the conclusion of the hearing the Examining Committee found that "on February 22, 1973 McKey and Poague, Inc. and Robert [*sic*] M. Hiles

acting under the direction of Eugene F. Migely" rejected the applications of two black males, Maxence and Marc-Aurele Jeanty for Apartment 107 in Crestline because the "owner of the building is no longer accepting single men." Nonetheless, "on March 2, 1973, McKey & Poague, Inc., as agents by Eugene F. Migely did execute a lease for the exact [same] apartment" to two single white men. Similarly, "on March 12, 1973, McKey & Poague, Inc., as agents by George M. Hiles, submitted to two single white men a lease for space in the same premises."

The Examining Committee also found:

"That thereafter, a reason was advanced explaining that the owners did not rent to single men. This was found to be subterfuge. The refusal to rent to the Jeantys was found to be racially discriminatory, as a result of a proceeding in the United States District Court for the Northern District of Illinois, 73 L 675, and in the United States Court of Appeals for the Seventh Circuit, 73-1634, entitled Marc-Aurele Jeanty and Maxence Jeanty vs. McKey & Poague, Inc., et al."

They therefore concluded:

"That the conduct engaged in by Respondents as set forth in the Findings of Fact, constitute a violation of Chapter 114½, Section 8(e) subsections 1, 3, 11, 14, and 17. Illinois Revised Statutes (1971) and Rule VII of the Rules and Regulations for the Administration of the Illinois Real Estate Brokers and Salesmen Act (1972)."

Based on these findings and conclusions, the Examining Committee recommended that:

"(a) License No. 76-132383 of Respondent George M. Hiles be suspended for a period of thirty (30) Days;

(b) License No. 75-51411 of Respondent Eugene F. Migely be suspended for a period of sixty (60) Days;

(c) Corporate Real Estate Broker Certificate of Registration No. 78-144 issued to McKey & Poague, Inc. be suspended for a period of sixty (60) Days;"

and these recommendations were adopted by the Director in his order of November 21, 1975. Thereafter, plaintiffs brought this action under the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*) alleging that:

"(a) The conduct complained of is not cause for suspension under the applicable statute and the Department therefore exceeding [*sic*] its statutory authority in this proceeding.

(b) The Department exceeded its statutory authority when it attempted to suspend plaintiff corporation from acting as a real estate broker.

(c) The administrative proceedings are barred by the statute of limitations because 'actions * * * for a statutory penalty * * *

shall be commenced within two years \* \* \*.' Ill. Rev. Stat. 1973, ch. 83, §15, see also Ch. 38, §3—5(b).

(d) The decision is contrary to and unsupported by the evidence introduced at the hearing before the Examining Committee. The Examining Committee considered matters outside the record in making its findings, conclusions and recommendations to the Director."

The circuit court reversed the decision of the Department holding that plaintiffs' conduct did not fall within the purview of the Act.

OPINION

Defendants contend that we should reinstate the Director's order suspending plaintiffs' licenses. They argue that section 8(e) subsections 1, 3, 11, 14 and 17 of the 1971 act (Ill. Rev. Stat. 1971, ch. 114½, par. 8(e), subpars. 1, 3, 11, 14, 17) and Rule VII of the Rules and Regulations for the Administration of the 1971 Act can be construed to prohibit racially discriminatory conduct.

In *Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 370 N.E.2d 1198, we considered whether the provisions of section 15(e), subsections 11, 15 and 21 of the 1973 Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1973, ch. 114½, par. 115(e), subpars. 11, 15, 21) could be construed to prohibit the racially discriminatory practice of racial steering.

■■ In examining the court's role in reviewing an administrative agency's construction of a statute we noted in *Ranquist* that:

"While a court is not formally bound by the administrative decision as to legal effect of statutory words, it should give that conclusion great weight, using it as a substantial factor in its own construction of the statute. (*First National Bank & Trust v. City of Rockford* (1977), 47 Ill. App. 3d 131, 361 N.E.2d 832; *Youakim v. Miller* (1976), 425 U.S. 231, 47 L. Ed. 2d 701, 96 S. Ct. 1399.)

\* \* \*

[Accordingly a] reviewing court's function is to see if the agency had a reasonable basis in law to interpret the statutory terms to prohibit the conduct." 55 Ill. App. 3d 545, 550, 555, 370 N.E.2d 1198, 1202-03, 1206.

■■ We also noted that the act "is not a penal measure, to be strictly construed against the State, but a broad statutory system" which is remedial and therefore should be liberally construed. (55 Ill. App. 3d 545, 551-52, 370 N.E.2d 1198, 1203.) We thereafter held that construing subsections 11, 15 and 17 of the 1973 act as prohibiting racially discriminatory conduct had a reasonable basis in law. Accordingly, because of the broad public interest purpose of the act as well as the expertise and experience of the Department, we deferred to its judgment and reinstated its decision.

We are in accord with the *Ranquist* decision and adopt the opinion expressed therein. Subsections 11, 15 and 21 of the 1973 act are identical to subsections 11, 14 and 17 of the 1971 act with which we are concerned here. We therefore hold that subsections 11, 14 and 17 can be construed as prohibiting racially discriminatory conduct. For the same reasons, we hold that subsections 1 and 3 of the 1971 act can also be construed as prohibiting racially discriminatory conduct.

■■ Plaintiffs, however, responding to the *Ranquist* decision argue (1) that the act is penal in nature and therefore should be "strictly construed," and (2) that terms such as "unworthiness or incompetency" and "dishonest dealing" used in both the 1971 and the 1973 act are unconstitutionally vague. However, we considered and rejected both these arguments in *Ranquist* and we re-affirm the opinions expressed therein. Moreover, even if we accepted plaintiffs' arguments the result would not change. In addition to subsections 1, 3, 11, 14 and 17 of the 1971 act, the Department also charged plaintiffs with violating Rule VII of the 1971 act. Even "strictly construed" Rule VII clearly prohibits racially discriminatory conduct. Consequently, plaintiffs' suspensions could be upheld even if subsections 1, 3, 11, 14 and 17 were "strictly construed," or found to be unconstitutionally vague, so long as their conduct was found to fall within the purview of Rule VII.

■■ Plaintiffs, however, contend that their conduct does not fall within the ambit of Rule VII. They noted that section 1 of Rule VII prohibits a broker from entering into a discriminatory "listing agreement." Although plaintiffs insist there was no "listing agreement" here, Hiles testified that Presbitero and McKey & Poague had a "management agreement" obligating the latter to find tenants. We fail to see the distinction plaintiffs attempt to draw.

■■ Plaintiffs also argue that section 2 of Rule VII is inapplicable because they received no "written prohibition" from Presbitero regarding race. However, section 2 of Rule VII does not require one. Nor does it require that the prohibition apply to all apartments in a complex as plaintiffs suggest. Rather, it would apply even if the prohibition pertained only to Apartment 107.

Plaintiffs also contend that the decision of the Department was against the manifest weight of the evidence.

The findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct. (Ill. Rev. Stat. 1973, ch. 110, par. 274.) Where it appears that there is evidence to support the findings of an administrative agency its decision should be affirmed. (*Fenyes v. State Employees' Retirement System* (1959), 17 Ill. 2d 106, 160 N.E.2d 810.) "The fact that a court hearing the case originally might have reached a different conclusion is immaterial * * *." (*Zinser v. Board of*

*Fire & Police Commissioners* (1961), 28 Ill. App. 2d 435, 438, 172 N.E.2d 33, 34.) Accordingly, in order to reverse an administrative order an opposite result must be clearly evident. *Wolbach v. Zoning Board of Appeals* (1967), 82 Ill. App. 2d 288, 226 N.E.2d 679.

■■ The testimony revealed that on February 22, 1973, George M. Hiles, at the direction of Eugene F. Migely, wrote a letter to the Jeantys explaining that the application had been rejected ostensibly because "the owners of the building are no longer accepting any single men in Crestline Arms." Yet only one week later, on March 2, 1973, the exact same apartment was leased to two single white men. Although plaintiffs suggest this resulted from a change in policy by the building owner, Presbitero, the Department's conclusion that Hiles and Migely participated in discriminated against the Jeantys on the basis of race is reasonable and not manifestly against the weight of the evidence.

■■ The argument that Hiles and Migely were not aware of the discriminatory policies of Presbitero was similarly rejected by the Department. It is the responsibility of the agency to resolve conflicts in testimony and determine the credibility of witnesses. (*Davenport v. Board of Fire & Police Commissioners* (1972), 2 Ill. App. 3d 864, 278 N.E.2d 212.) We do not find the Department's decision on this issue to be so erroneous as to require a reversal as to Hiles and Migely.

■■ Although we uphold the decision of the Department as to the individuals who actually participated in the unlawful racial discrimination, we have found no evidence in the record indicating that McKey & Poague authorized, was aware of, or in any manner condoned the discrimination. The record is devoid of any evidence to support the decision that McKey & Poague was itself guilty of racial discrimination, and the decision of the Department as to McKey & Poague is therefore against the manifest weight of the evidence. Indeed, the testimony indicates that McKey & Poague expressly forbids its employees, including Hiles and Migely, from engaging in racial discrimination, requiring each employee to sign an agreement to adhere to fair housing laws and displaying posters containing anti-discrimination laws in each office. The record reflects no corporate departure from this enunciated policy.

■■ While the actions of the two employees were proper grounds for a suspension of their individual licenses, those actions do not constitute a basis under the facts here for the suspension of the corporate certificate of the employer, McKey & Poague. Section 16(e) of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1975, ch. 114½, par. 116(e)) provides:

> "Any unlawful act or violation of any provisions of this Act upon the part of any real estate salesman, or employee, of a registered real estate broker, shall not be cause for the revocation of the

certificate of any real estate broker, partial or otherwise, unless it shall appear to the satisfaction of the Department that the real estate broker had guilty knowledge thereof."

We would not read the above section so technically as to apply only to a revocation and not a suspension. Certainly a revocation, "partial or otherwise," logically includes a 60-day suspension. The legislature has determined that an employer's brokerage certificate may not be taken away as the result of the illegal act of an employee unless the employer is aware of the illegal conduct. An employer real estate broker is not, therefore, strictly liable for his employee's illegal and unauthorized conduct.

■■ The evidence presented to the Department does not demonstrate that McKey & Poague as employer of Hiles and Migely was aware of their illegal conduct. Furthermore, although the Department properly found that Hiles and Migely were aware of the discriminatory policies of Presbitero, we do not believe that such knowledge under these facts can be imputed to McKey & Poague. Although knowledge acquired by an agent within the scope of his agency will generally be imputed to his principal, knowledge will not be imputed where the agent has a motive or interest in concealing the facts from the principal. (See *Booker v. Booker* (1904), 208 Ill. 529, 70 N.E. 709; *Metropolitan Sanitary District v. Anthony Pontarelli & Sons, Inc.* (1972), 7 Ill. App. 3d 829, 288 N.E.2d 905.) Where Hiles and Migely were acting in violation of both the law and their employment agreements, they certainly possessed a motive or interest in concealing Presbitero's policies from their employer, and the knowledge should not, therefore, be imputed to McKey & Poague.

Therefore, although we do not question the authority of the Department to revoke or suspend a corporate certificate where the facts so warrant, we believe that the decision of the Department concerning McKey & Poague was clearly erroneous and against the manifest weight of the evidence.

For the foregoing reasons that portion of the judgment of the circuit court reversing and vacating the Department's suspension of McKey & Poague's certificate is affirmed. The remainder of the judgment reversing and vacating the suspensions of the licenses of George M. Hiles and Eugene F. Migely is reversed, and the Director's order suspending these licenses is reinstated.

Affirmed in part; reversed in part.

MEJDA and WILSON, JJ., concur.