## CIRCUIT COURT OF WARREN COUNTY

Donald W. Vaughn

v.

Virginia Real Estate Commission

August 25, 1986

Case No. (Chancery) 4352

By JUDGE ROBERT K. WOLTZ

This is an appeal under the Administrative Process Act, Code §§ 9-6.14:1, *et seq.*, by Donald W. Vaughn, a real estate broker, from a decision of the Virginia Real Estate Commission. The Commission found him in violation of certain of its regulations and imposed the sanction of a sixty-day suspension of his license as a broker and a fine of $500. The grounds for appeal are essentially that the decision of the Commission is unsupported by the evidence and results from the application of an error in law.

Factually the problem arises because of the existence of termites in a house listed by Vaughn in a multiple listing service but sold by another broker in 1978. The listing described the house as in good condition.

In 1972 Vaughn had sold the same house to a building contractor in "as is" condition because of termite infestation, inference being that a contractor would be able to repair the damage whereas an ordinary buyer would not want the property. After one or more sales in which Vaughn was not involved, in 1977 he was again broker in the sale of the house. This purchaser found extensive termite damage. As a result Vaughn arranged for the seller to grant the purchaser a $5,000 credit on the purchase money deed of trust, which credit was made a matter of

public record. Vaughn observed this purchaser personally making repairs due to the termite damage and was informed by the purchaser that he personally had given the house termite treatment, though the purchaser was a lay person in that respect.

Next, under the 1978 contract of sale the purchasers were entitled to a termite certificate. Because of weather and other conditions termite experts were unable to make sufficient inspection to supply the certificate. One inspector testified that in front of Vaughn's office he had informed a sales employee of Vaughn that his partial inspection had disclosed termite damage and that with this information the employee forthwith had gone into Vaughn's offices. The employee testified that he had no recollection of this occurrence.

Subsequently at closing at the financial institution's office Vaughn and the purchasers, who were unrepresented by counsel, were present. In lieu of a termite certificate Vaughn suggested that $250 of the purchase price be placed in escrow for possible "termite treatment," to which the purchasers were agreeable. Within a short time of closing these purchasers became aware of problems, which on inspection by termite experts showed extensive termite infestation and damages. A suit by the purchasers was settled by means of Vaughn's buying the house from them for the purchase price they had paid, plus their attorney fees and other expenses.

The report of the Hearing Officer of the Commission found Vaughn in violation of Regulation 8.2(2) of the Commission by making a misrepresentation as to the property sold. The conclusion also finds Vaughn in violation of 8.2(36) based on several factors, including "knowledge which is by law imputed to Vaughn because it was reported to his employed salesman, Brown, by the exterminator," and two violations of 8.2(8), the first violation referring to "knowing by imputation" the report of the exterminator and the second violation founded on "his conduct, aforementioned." In its Opinion and Order the Commission accepted, adopted and incorporated by reference "the Report and Recommendations [of the Hearing Officer] *in toto.*"

Judicial review of administrative actions poses some difficulties and delicacy. 2 Am. Jur. 2d, *Administrative Law*, §§ 552 and 553. Implicit in that review are the concepts of separation of powers and judicial restraint. *See Aetna Insurance Co.* v. *Commonwealth*, 160

Va. 698 (1933). As a judicial doctrine now often given statutory form courts in general have restrained themselves from invading the just province of the executive and legislative branches, and also more recently with the rise of administrative agencies their area of responsibility, whether these agencies, as they sometimes are, looked upon as a fourth branch of government or part of one of the two political branches or some sort of hybrid. Not only by case law does this doctrine find expression, but now in Virginia is embodied in the Administrative Process Act. It says in pertinent part in § 9-6.14:17:

> The burden shall be upon the party complaining of agency action to designate and demonstrate an error of law subject to review by the court. Such issues of law include. . . (4) the substantiality of the evidential support for findings of fact. . . When the decision on review is so to be made on such agency record, the duty of the court with respect to issues of fact is limited to ascertaining whether there was substantial evidence in the agency record upon which the agency as the trier of facts could reasonably find them to be as it did. . . . [T]he court shall take account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted.

This statute limits the scope of judicial review to whether there is "substantial evidence in the agency record" supporting the agency's decision. *State Board of Health* v. *Godfrey*, 223 Va. 423 (1982). This standard is explicated in *Virginia Real Estate Commission* v. *Bias*, 226 Va. 264, 269 (1983):

> The "substantial evidence" standard, adopted by the General Assembly, is designed to give great stability and finality to the fact-findings of an administrative agency. The phrase "substantial evidence" refers to "such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion." *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938). (Emphasis

added.) Under this standard, applicable here, the court may reject the agency's finding of fact "only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion." B. Mezines, Administrative Law, § 51.01 (1981). (Emphasis in original.)

In accordance with these principles of showing due deference to the finder of fact, the presumption of official regularity, the agency's expertise and the purposes of the law under which the agency acted the Court affirms the first conclusion of the Commission as to Vaughn's making a misrepresentation. There is a difficulty, however, with the remaining three conclusions of the Commission. All three of them are based at least in part on the theory of imputation to Vaughn of his employee Brown's knowledge of existing termite damage. As asserted by Vaughn, this imputation of knowledge to him is an error of law.

It is an elemental principle of law with some specific exceptions that at least in purely civil matters knowledge had by an agent or employee is by imputation known by the principal or employer. (As the salesman Brown was not actually engaged in the real estate transaction at hand he was in this instance not Vaughn's agent but rather his employee or servant, but this distinction is not of material importance here.) This is parallel to if not a part of the doctrine of *respondeat superior*, a doctrine which as a matter of policy generally in civil matters imposes responsibility on the master for the acts of his servant in the course of or within the scope of the latter's employment by imputing the acts of the servant to the master. 53 Am. Jur. 2d, *Master and Servant*, section 417.

In criminal matters or those involving forfeiture or penalty the rule is different and the acts of the servant are not imputed to the master and "[u]nless the statute imposing the penalty expresses a contrary intent, an employer will be held liable for a statutory penalty based upon the act of his employee only in case of some culpable fault or omission on the employer's part." 36 Am. Jur. 2d, *Forfeitures and Penalties*, § 62. *See also Greene* v. *Real Estate Commission*, 218 A.2d 508 (D.C. App. 1966), holding that *respondeat superior* as applied respecting civil liability of a master is not applicable "to

the imposition of a penalty or forfeiture" unless there is a contrary statutory intent. Present Regulation 3.12 of the Commission itself recognizes this principle:

> *Principal Broker's Responsibility for Acts of Associates.* Any unlawful act or violation of any of the provisions of Title 54, Chapter 18 or of Title 36, Chapter 5 of the Code of Virginia of 1950, as amended, or of the regulations of the Commission by any real estate salesman, employee, partner or associate of a principal broker, shall not be cause for disciplinary action against the principal broker unless it appears to the satisfaction of the Commission that the principal broker knew or should have known of the unlawful act or violation.

*Davis* v. *Missouri Real Estate Commission*, 211 S.W.2d 737 (Mo. 1948), a disciplinary hearing of a real estate salesman and his employer on the ground of untrustworthiness, bad faith, etc., upheld suspension of the license of the salesman but reversed suspension of the broker-employer's license holding, "The rule of *respondeat superior*, under which civil liability upon the master for the acts of an employee is imposed, is not applicable when it comes to the imposition of a penalty or forfeiture."

By corollary and analogy, where penalties or forfeitures are involved knowledge of an employee should not be imputed to the employer with the result that the employer suffers a penalty or forfeiture. Reason dictates that if the employer should not be held subject to a penalty or forfeiture based on the imputation to him of the employer's acts, neither should he suffer a penalty or forfeiture based on imputation to him of the employee's knowledge. (In *McKey & Poague, Inc.* v. *Stackler*, 63 Ill. App. 3d 142 (1978), suspension of a real estate broker's license by administrative action based on imputation to the broker of knowledge possessed by its agents was reversed because of that imputation. The Court recognized the general rule that knowledge of the agent is imputed to the principal but relied on an exception to the rule. The exception, however, was not based on the suffering by the principal of a penalty or forfeiture. The court finding that the agents had a motive or interest in concealing the knowledge

from the principal held that under such circumstances there will be no imputation of the knowledge to the principal.)

It may or may not be that the Commission as arbiter of the facts, without erroneously applying the principle of imputation to employer of his employee's knowledge, could have reached its last three findings of violation on the evidence as a whole or on inference of actual knowledge by Vaughn of his employee's knowledge or otherwise. On this the Court will not express an opinion. As to these three violations the fact is they were founded at least in part on misapplication of the theory of imputation of knowledge. Mere excision of this factor, so bound up as it is with others in the Commission's determination, affords the Court no way of determining the validity of the agency's conclusions and actions.

In addition, if *arguendo* the Commission reached the right decision rooted in an incorrect ground, the decision still could not be sustained. As stated in *First Virginia Bank* v. *Commonwealth*, 213 Va. 349, 351 (1972):

> Where a decision of the [State Corporation] Commission is based upon a mistake of law it must be reversed. Even where the Commission has reached the right result for the wrong reason, its decision, unlike that of a trial court, will not be permitted to stand. (Citations omitted.)

If it were otherwise, the courts would be intruding into an area judicially and legislatively reserved to administrative bodies.

The determination of the Commission as to violation of Regulation 8.2(2) is affirmed. The determinations of the Commission finding violations of former Regulations 8.2(38), 8.2(11) and 8.2(9) for the reasons stated above are, pursuant to § 9-6.14:17, set aside and the case remanded to the Commission for further consideration of them. On remand the Commission shall on the basis of the record but without reliance on the theory of imputation to Vaughn of the knowledge of his employee derived from the exterminator Arnold, make a new determination whether violations of Vaughn in those three instances exist. After making those determinations and in light of them, the Commission shall further consider if its

sanction against the appellant should be affirmed or modified.