**HOME INSURANCE COMPANY,**
Plaintiff–Appellant,

v.

**Elliott DUNN and Thomas Davis and Julie Lundquist, Guardians ad litem for Dwayne S. Karow, Dwight D. Karow, and Thaddeous J. Karow, minor children, as heirs of the Estate of Dwight Owen Karow, Defendants–Appellees.**

No. 91–3302.

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 1992.

Decided May 13, 1992.

Ronald R. Peterson, Jenner & Block, Philip E. Howard, John J. Lynch (argued), Daniel P. Caswell, Haskell & Perrin, Chicago, Ill., for plaintiff-appellant.

Marvin Glassman, Raben, Formusa & Glassman, Chicago, Ill., Thomas Davis (argued), Julie A. Lundquist, Lundquist & Mitchell, Zion, Ill., for defendants-appellees.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and NOLAND, Senior District Judge.*

BAUER, Chief Judge.

This case involves a dishonest lawyer and an insurance policy providing coverage for legal malpractice. Lawrence M. Cooper is the crooked attorney, who was the president and sole shareholder of the law firm Cooper & Cooper, Ltd. In his position as president, Cooper obtained a legal malpractice insurance policy providing coverage for himself and the twelve other attorneys associated with the firm. At the time Cooper acquired the policy, he was also embezzling funds belonging to the firm's clients. The insurance policy required Cooper to state whether he or any of the attorneys in the firm were aware of any past or present situation which could result in the filing of a malpractice claim against the firm. Although aware of his own criminal activities, Cooper, understandably, failed to provide this information on the application.

The Home Insurance Company (Home), underwriters of the insurance policy, brought this declaratory action suit claiming that the professional liability policy is null and void due to Cooper's material misrepresentation on the application.[1] All parties agree that Cooper's misdeeds are not covered by the policy. However, Home seeks to have the entire policy invalidated, denying coverage to all attorneys at the firm, even though these associates were unaware of Cooper's wrongdoing.

A legal negligence suit is currently pending in an Illinois state court against defendant Elliott Dunn, who was an attorney with Cooper & Cooper.[2] Defendants Thomas Davis and Julie Lundquist, guardians ad litem for the minor Karow children, filed the legal negligence claim. The Karow's state court claim alleges that Dunn negligently failed to protect funds belonging to the estate of Dwight Owen Karow from Cooper's theft.[3]

The Karow defendants brought a motion to dismiss this suit. Home, in turn, filed a motion requesting summary judgment. The district court granted the defendants' motion, holding that although the policy was void as to Cooper, the other attorneys were innocent insureds who were still entitled to protection from the policy.[4] The district court stated that generally when an agent commits fraud in acquiring a contract, the fraud is imputed to the innocent principles and voids the entire contract. However, the court found that the associate attorneys were protected by the "adverse interest" exception, because Cooper committed the fraud to conceal his own misconduct. Home appeals this ruling, arguing that the policy is void *ab initio* under Illinois statutory law. Home further argues that the policy must be found unenforceable under either an agency law or contract law analysis. The appellant requests that we reverse the district court's

---

* The Honorable James E. Noland, Senior District Judge of the United States District Court for the Southern District of Indiana, Indianapolis Division, is sitting by designation.

1. After discovery of his crimes, Cooper filed bankruptcy proceedings on behalf of himself and the law firm. In an earlier appeal, this court questioned whether the bankruptcy court possessed subject matter jurisdiction over this claim. *Home Ins. Co. v. Cooper & Cooper, Ltd.,* 889 F.2d 746 (7th Cir.1989). On remand, the district court determined that the bankruptcy court lacked jurisdiction over the suit. The court granted Home leave to amend its complaint. The amended complaint alleged diversity jurisdiction, securing the jurisdiction of the district court.

2. Home also named as a defendant former Cooper & Cooper attorney Murray Westler, against

whom another legal malpractice claim had been filed. However, because Westler never answered the complaint or filed any motion on his own behalf, the court granted a motion for default judgment against Westler.

3. Dunn successfully prosecuted a wrongful death suit for the estate of Dwight Owen Karow, resulting in a $350,000 settlement. Two checks were tendered to Dunn, who signed them over to Cooper. Instead of investing the funds, Cooper embezzled them.

4. Dunn failed to join the Karows' motion. The district court, however, found that the Karow defendants were "asserting Dunn's interest, as well as their own, in the motion to dismiss." Thus, the court also dismissed the complaint against Dunn. Dunn and the Karows will be collectively referred to as "the defendants."

dismissal of its complaint and grant its motion for summary judgment.

## I. THE INSURANCE POLICY

The professional liability policy issued by Home is known as a "claims made" policy. It provides coverage for any claims filed against the insured during the policy period. Thus, the policy insures against not only future deeds that may give rise to a potential lawsuit, but also past acts which could create liability. Thus, the insurance application requested information concerning past situations that could result in liability. The application asked: "After inquiry of each lawyer named in [the policy], ... [d]oes any lawyer ... know of any circumstances, act, error or omission that could result in a professional liability claim against him or his predecessors in business?" Although aware of his own criminal activities, Cooper responded "no" to this query.

Home points to certain language found in the insurance policy to support its argument that Cooper's false response voids the policy *ab initio*. The "conditions" section of the policy provided, in part:

I. Application. By acceptance of this policy, the Insured agrees that the statements in the application are personal representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the Insured and the Company, or any of its agents relating to this insurance.

The policy also contained a similar declaration which stated:

I/We declare that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the Company evidence its acceptance of the application by issuance of a policy.

Based upon this language and an Illinois statute, Home argues that Cooper's false statement must be deemed material. Because Home issued the policy in reliance on this information, the entire policy is void.

The defendants, on the other hand, point to other language in the policy, which they claim expressly exempts the other attorneys from the consequences of Cooper's fraud. They argue that, even though only Cooper signed the application, the policy intended to create a separate contract for each attorney. In support of this contention, the appellees point out that the policy specifically excludes coverage for a judgment "arising out of any dishonest, deliberately fraudulent, criminal, maliciously or deliberately wrongful acts" committed by an insured. However, the policy waives this exclusion for those who were not involved in the wrongful act.

[T]he company agrees that such insurance as would otherwise be afforded under this policy shall apply with respect to each and every Insured who did not personally commit or personally participate in committing one or more of the acts, errors, omissions or personal injuries described in any such exclusion or condition; provided that if the condition be one with which such Insured can comply, after receiving knowledge thereof, the Insured entitled to the benefit of the Waiver of Exclusions and Breach of Conditions shall comply with such condition promptly after obtaining knowledge of the failure of any other Insured or employee to comply herewith.

With respect to provision II.(a) above [relating to dishonest, deliberately fraudulent, criminal, malicious or deliberately wrongful acts], the Company's obligation to pay in the event of such waiver shall be in excess of the deductible and in the excess of the full extent of any assets in the firm of any Insured who is not a beneficiary to the waiver.

The defendants argue that this language, as well as case law which recognizes exceptions for innocent co-insureds, supports their theory that the innocent attorneys should not be bound by Cooper's misrepresentation.

## II. ANALYSIS

Home appeals both the district court's grant of the defendants' motion to dismiss and the denial of its motion for

summary judgment. We review both determinations *de novo. See Burda v. M. Ecker Co.*, 954 F.2d 434 (7th Cir.1992); *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079 (7th Cir.1992). As the facts are not in dispute in this case, we need only decide whether the district court erred in applying the law to these facts.

■ Home argues that Illinois law voids the insurance policy *ab initio*. The company relies upon Ill.Rev.Stat. ch. 73, ¶ 766, which provides:

> No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor, of which a copy is attached to or endorsed on the policy, and made a part thereof. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.

Home argues that because Cooper knowingly made a fraudulent, material misrepresentation on the application, the entire insurance contract is void. Home recognizes the waiver of exclusion provisions in the policy, referred to by the defendants. However, the company contends that such provisions would only come into play *after* the policy is in force. The distinction is subtle, but important. Because the fraud was committed during the negotiation of the contract, no insurance policy existed. If there had been no fraud or misrepresentation on the application (if Cooper began his criminal acts after the policy was in force), the waiver of exclusion clauses would be valid. However, because no policy existed, the defendants may not now rely on the waiver provisions.

Without citing any authority, the defendants argue that the real question on appeal is whether Cooper's misrepresentation was made "by the insured or on his behalf" for purposes of the Illinois statute. There is no question that, in the absence of Cooper's false statement, Home never would have issued the policy to Cooper or any of the attorneys at the firm. The misrepresentation served to benefit not only Cooper, but all the attorneys in the office.

Further, we believe that the defendants misconstrue the statute. Illinois courts have consistently held that, under the statute, an insurance contract may be invalidated for one of two reasons. First, if a misrepresentation is made with the intent to defraud, the contract is void. Alternatively, if the misrepresentation materially effects the risks taken, the company underwriting the policy may rescind it. In this regard, the Illinois courts have held:

> A material misrepresentation will void the contract even though made through mistake or good faith.... In other words, it is unnecessary for the insurer to prove that a misrepresentation was made with the intent to deceive if it was material to the risk assumed.

*Ratcliffe v. International Surplus Lines Ins. Co.*, 194 Ill.App.3d 18, 141 Ill.Dec. 6, 11, 550 N.E.2d 1052, 1057 (1st Dist.1990) (citations omitted). Thus, ignorance of Cooper's fraud is irrelevant. The very fact of a material misrepresentation voids the policy. Though the other attorneys did not intend to deceive, the falsehood on the application is fatal. Cooper's misrepresentation caused Home to issue a policy to all the attorneys that otherwise would not have been forthcoming. We agree that the Illinois statute allows rescission of the policy.

The defendants cite to agency law in an effort to circumvent this conclusion. Because the contract is void under Illinois statutory law, we believe that reliance on agency principles in an attempt to revive the insurance policy is inappropriate. In addition, we note that none of the cases cited by the appellees pertain to the statutory issue on appeal. All the cited cases involved the application of agency princi-

ples to suits alleging common law fraud.[5] None applied agency law concepts to challenges brought under this insurance rescission statute, Ill.Rev.Stat. ch. 73, ¶ 766.

The district court erred in dismissing Home's complaint. Cooper's misrepresentation, which was made ·with the intent to deceive and materially affected the risks assumed by Home, voids the insurance contract under Illinois law. Thus, Home is entitled to judgment as a matter of law.

The decision of the district court is VACATED and this cause is REMANDED with instruction to enter judgment for the plaintiff.

---

**5.** The appellants cite the following cases, in which one party sought to use agency principles to impute the guilty knowledge of one to others without such knowledge: *Economy Fire & Casualty Co. v. Warren,* 71 Ill.App.3d 625, 28 Ill.Dec. 194, 390 N.E.2d 361 (1st Dist.1979) (insurance company sought rescission of policy for fraud occurring *after* negotiation of valid policy); *Booker v. Booker,* 208 Ill. 529, 70 N.E. 709 (1904) (common law fraud suit challenging acquisition of land deed); *Metropolitan Sanitary* *District v. Pontarelli & Sons, Inc.,* 7 Ill.App.3d 829, 288 N.E.2d 905 (1st Dist.1972) (fraud in construction contract); *McKey & Poague, Inc. v. Stackler,* 63 Ill.App.3d 142, 20 Ill.Dec. 130, 379 N.E.2d 1198 (1st Dist.1978) (review of administrative license suspension of individual employees and brokerage company based on discriminatory acts of employees); *Evanston Bank v. Conticommodity Services, Inc.,* 623 F.Supp. 1014 (N.D.Ill.1985) (illegal trading of commodities).