KAREN OKINO, Plaintiff-Appellee, *v.* THE DEPARTMENT OF CORRECTIONS *et al.*, Defendants-Appellants.

First District (4th Division) Nos. 79-1094, 79-1282 cons.

Opinion filed June 5, 1980.

William J. Scott, Attorney General, of Chicago (Patricia Rosen, Assistant Attorney General, of counsel), for appellants.

George F. Galland, Jr., of Chicago, for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Karen Okino, was employed as an Administrative Assistant II with the defendant, the Illinois Department of Corrections (the Department). She was laid off effective August 3, 1976. The layoff was appealed to the defendant Civil Service Commission (the Commission). Following a hearing before the Commission, the hearing officer recommended that the appeal be denied. The Commission concurred in the hearing officer's conclusion. Okino then filed a complaint for administrative review in the circuit court of Cook County. The circuit court reversed the decision of the Commission and ordered that Okino be reinstated. The defendants appeal from that order.

The reason given Okino for her layoff was that the Department was being reorganized. Okino contends her layoff was a "subterfuge for discharge" in violation of the Commission's Rule 12 which provides in part:

"Section 12.01 A certified employee who believes that he has been separated from State service by a personnel transaction used as a subterfuge for discharge may * * * appeal in writing to the Commission.

Section 12.02 The appeal must allege specific facts which if proven would establish a *prima facie* case that the employee was in effect discharged contrary to and in violation of the requirements of Section II of the Personnel Code. * * *

Section 12.03 * * * In any hearing called under the provisions of this Article to resolve a dispute of fact, the employee has the burden of establishing * * * a *prima facie* case proving that the employee was pretextually discharged."

The Commission's Personnel Code describes the layoff procedure in Rule 2—520. That rule provides, in part:

"An operating agency may request the layoff of an employee because of lack of funds, material change in duties or organization or lack of work or the abolition of a position for any of these reasons."

Okino was hired by the Department as an Administrative Assistant II in February of 1975 and was assigned to the administrator of the Adult

Field Services Division (AFS Division), who at that time was Daniel W. Simons. The AFS Division supervises all of the programs for inmates of the corrections system following release. Most of the work in the Division involves the coordination and implementation of grants from the Illinois Law Enforcement Commission (ILEC). Okino's duties included monitoring AFS Division programs, preparing ILEC progress reports, preparing management-by-objective reports and monitoring the zero-based budget, overseeing compliance with title XX of the Social Rehabilitation Services Act, writing an AFS newsletter, coordinating and delivering speeches, acting as the affirmative action liaison for the AFS Division and assisting the administrator with policy formation and general operation of the Division.

On June 1, 1976, Joseph Longo became acting deputy administrator of AFS. At this point, there were two Administrative Assistants II in the AFS division, Okino and Fleming Williams. Sherwood Edwards had the title of Corrections Detention Consultant. On July 8, 1976, Simons resigned and Longo became the acting administrator. On July 9, 1976, Okino was informed that she was being laid off.

At the hearing before the Commission, Okino testified that she thought Simons resigned because the Department was dissatisfied with his performance. Okino said she had little contact with Longo before he was appointed to take Simons' place as administrator. She said that immediately after Simons' resignation on July 8, 1976, Longo held a meeting in his office with Williams, Kathleen Hilty (Simons' secretary), Jane Vavrock (Williams' secretary who became Longo's secretary), and herself. Longo informed them he wanted to get the backlog of paperwork cleared up and that he was giving some of Okino's duties to others so that she could spend her time filing. Hilty was to help and Williams was put in charge of the project. Okino said she asked Longo why he was putting a professional, Williams, in charge of another professional, herself, and he said he wanted to be sure that the job was done. Okino objected because she thought there were others in the office who had nothing to do at that time.

On the next day, July 9, 1976, Okino said Williams informed her that he was reassigning responsibility for the ILEC grant from her to Edwards. She asked him what authority he had to reassign her job duties, and he said he had the authority as her "supervisor" and because of his role as "Mr. Longo's new assistant." About 2:30 p.m. the same day, Okino said she talked to Longo in his office. She asked him for a clarification of her role within the agency. Longo told her that he was not the administrator, that he would assign jobs as he saw fit, and that he did not get along with her. He also said he was going to discuss her situation with the Director of the Department and that he would get back to her. About

5 p.m. that day Okino was given a memo by Longo informing her that effective August first her job had been abolished and that she was laid off. The memo said the action was taken "in accordance with a material reorganization of this office."

Okino said she had not seen any memoranda indicating that the office was to be reorganized and that from the time Longo became acting administrator he had not informed her of any plans to reorganize the office. She also said there were no plans for a future reorganization during the time that Simons was administrator.

Okino said she spoke with Ronald Townsel, the regional administrator, on July 8, 1976, and told him she was concerned about her status in the Department. She said she wanted to know if there were any positions available to which she could transfer. Townsel said he would look into it for her. A week later she met with Townsel again, and at that time he stated Longo told him that he, Longo, had to lay her off because of insubordination. She met with Townsel for a third time on July 27, 1976. At this meeting Townsel said he had to fill the open positions with Governor appointees. He advised her to make a request for a voluntary reduction.

Okino said she prepared a written request for a voluntary reduction and gave it to Longo on August 2, 1976. The Department never responded to the request except for a notice that an Administrative Assistant II position might be opening in Chicago. In response to that notice, she wrote to Ed Muth, chief of manpower affairs, expressing her interest in the position. She received a letter from Muth and scheduled an interview with him in mid-April of 1977. At the interview Muth said he was very interested in hiring her and she expressed her desire to work for him. He did not mention any monetary problems in connection with the position. On May 4, 1977, Okino received a letter from Muth's assistant asking her to complete an employment application. Okino called Muth in early June and asked about the status of her application. Muth told her there might be budget problems because his vendors were not paying their bills. At the hearing, Okino expressed her opinion that it was unlikely that a salaried position would be paid out of money from sales to vendors. In mid-June of 1977, Okino received a letter from Muth stating that he would not be able to hire her due to budget limitations.

Hilty, who worked as Simons' secretary until he was relieved of his duties, testified that Longo asked her to look for something in Okino's office about the time Simons left. Because of all the piles of papers in the office, Hilty could not find what Longo had asked for. When she informed Longo of this, he replied that he could not understand how something like that could happen. Her impression was that Longo was disgusted with the situation. Hilty was present at the July 8, 1976, meeting where Longo told

Okino to work on the filing. Okino told Longo she was not a file clerk, and Longo said he realized that, but he wanted the situation taken care of, and they all had to help. Hilty said Longo did not sound angry, but he looked angry and his face was red.

Longo testified that while he was deputy administrator he formed the opinion that there seemed to be a lot of overlapping responsibilities for jobs that the Administrator or a Regional Administrator could have performed. He also said he thought Okino's responsibility for the Affirmative Action Program seemed to overlap with the function of the Superintendent of Affirmative Action, and he thought Simons had been delegating too much of his responsibility to Okino, his administrative assistant.

Longo also said that while he was deputy he had conversations with Mr. Rowe, the former chief of administration, and Joel Schunk, the personnel officer, regarding possible plans for reorganization. When those conversations took place Longo had no idea that he would be named administrator.

When Longo first learned he was to be the new administrator he told Rowe he thought the deputy position should be retained and suggested Eva Lee as a candidate for the position. Longo said his conversations with Rowe and Schunk concerning the reorganization continued after he became administrator. During his first week as administrator he determined that one person should be laid off. This decision was based on the fact that the deputy admininstrator position, which Longo held upon his return to the Department, was a newly created position at that time. Longo believed the new organization, including the position of deputy administrator, would function better than the previous one. He also believed the duties performed by Okino would more appropriately be performed by the deputy, and thus decided to eliminate Okino's position.

Longo said there was no official document setting forth the plan of reorganization, but the plan was formulated in his mind. Prior to the time he became deputy, a decision was made to phase out the central intake function from Chicago and to move it to Springfield. Williams' job was essentially eliminated with the transfer of the central intake function to Springfield. Longo admitted that the personnel rules could have permitted him to lay off Williams and to put Okino in the deputy position. He decided to keep Williams because he felt Williams had more potential and Williams also had seniority. Williams was given responsibility for the affirmative action program before Okino was, notified of her layoff. He did not tell Williams that Williams was to be Longo's new administrative assistant or that Williams was Okino's supervisor.

Longo said he received approval from Schunk to lay off Okino, and that Townsel was not involved. He never told Townsel that he had to fire

Okino for insubordination. He denied that Okino was laid off because of a personal conflict or because she was difficult to deal with. Schunk told him that certain requirements had to be met before the layoff could be effective; he relied upon Schunk to make certain that the requirements were met.

After Okino's layoff, Longo assigned the responsibility for the affirmative action program to Williams; Edwards was assigned the ILEC grant program and the title XX function; and Longo himself assumed the management-by-objective duties and responsibility for the "decision packages." The newsletter was discontinued.

Longo said sometime between July 7 and July 9, 1976, he decided an administrative assistant position should be eliminated. He was not thinking specifically about Okino's position but rather about the overall operation of the AFS Division. Eva Lee was hired as deputy in mid-July 1976, before Williams left the Department and before Edwards was reassigned to the interstate compact function. Okino's duties were not assigned to Eva Lee immediately after the layoff; they were not assigned to Lee until they could no longer be handled by others. The vacancies created by the departures of Okino, Williams and Edwards were not filled; the staff was kept at the same level except for the employment of Lee as deputy.

Longo described the July 9 meeting at which he asked Vavrock, Williams, Hilty and Okino to organize the filing system. He said he was surprised at Okino's response because the office did not have a filing clerk and because the papers to be filed were in her office. Williams was put in charge of the project because there was some heavy lifting involved, and Williams was the only male in the group. Longo said he never told Okino that he did not get along with her; he did say he was assigning jobs as he saw fit.

Williams testified that he was previously employed by the Department as an Administrative Assistant II. He said he never had any supervisory authority over Okino. He never told Okino that he was reassigning the ILEC program to Edwards; he only said that he was Okino's supervisor in the filing tasks. He testified that Okino "blew up" at him because she felt he had no authority to supervise her in the filing assignment.

Schunk testified that he was the chief personnel officer assigned to the Department. Schunk said he and Longo had several telephone conversations about eliminating an Administrative Assistant II position in the AFS Division. Schunk's recollection as to when these conversations occurred was rather poor, but he said he was "relatively confident that [Longo] was the Deputy Administrator when we had our first conversation." Schunk studied the organizational charts and concluded

that such a layoff would be possible. He had a second conversation regarding the layoff with Longo but he was not sure whether Longo was deputy or the acting administrator at that time. During a subsequent conversation, Longo told Schunk that he, Longo, had discussed the matter with the Director and that Schunk should proceed with the layoff. Schunk told Longo he could inform "the employee" right away so that she would have more than the 20 days notice provided for in the rules. Schunk also testified that the memo from Longo to Okino dated July 9, 1976, was actually premature because the Director had not yet approved the layoff.

Schunk said the reason Longo gave him for the layoff was reorganization and that Longo said he would absorb the bulk of Okino's duties. Schunk approved the layoff by examining where the job responsibilities would be assigned.

Schunk also testified that layoffs must be in order of seniority unless the agency demonstrates a good reason why seniority should be disregarded. He explained that a laid off employee may ask the Director for a voluntary reduction to any vacant position for which he qualifies if he does so within the period of time between the approval of the layoff and its effective date. He said Okino did not properly exercise this right within the appropriate time and that was why the Department never acted on her request.

Eva Lee, then the acting deputy administrator of the AFS Division, testified that her initial duties were supervision of the individuals responsible for the affirmative action program, title XX, the budget, the Federal grants and the ILEC grant. She assumed Williams' duties when he left the Department in September of 1976. When Edwards left in October or early November of that year she also assumed his duties which involved title XX, the Federal grants and the management-by-objective program. The only professional employee to be hired in the AFS Division after Okino's layoff was Nate Klein, who was hired in August or September of 1976 and acted as the law-enforcement liaison.

Lee also testified that she thought most of Okino's "duties were diminishing" because of her difficulty in relating to other people. She said Okino was not very well liked in the office. Lee said she did not like Okino very much and still does not although she does "respect her as an individual." She described the operation of the Division under Simons as "management by crisis."

Ronald Townsel, the regional administrator, testified that he had conversations with Okino during July of 1976, but said the conversations did not concern the reason for her termination. He denied telling Okino that she had been terminated for insubordination and denied being told that fact by Longo. On cross-examination, Townsel said Longo is his boss. He also said he felt Okino "was an extremely professional person that

kept to herself and had very little to do with anybody else," and that she could be abrasive.

On appeal, the Department argues Okino's layoff was not a subterfuge for discharge and that the decision of the Commission is supported by substantial competent evidence. Okino argues the trial court correctly concluded that the Commission's decision was against the manifest weight of the evidence; that the Commission improperly required Okino to disprove every conceivable legitimate motive by the Department; and that the Department's rationale for the layoff makes no sense.

■■ In reviewing an administrative decision, this court must accept as *prima facie* true and correct the agency's findings and conclusions on questions of fact. (Ill. Rev. Stat. 1977, ch. 110, par. 274; *McKey & Poague, Inc. v. Stackler* (1978), 63 Ill. App. 3d 142, 379 N.E.2d 1198.) The function of the reviewing court is limited to ascertaining whether the decision of the administrative agency is against the manifest weight of the evidence. Where it appears that there is evidence to support the findings of the agency, its decision should be affirmed. *Fenyes v. State Employees' Retirement System* (1959), 17 Ill. 2d 106, 160 N.E.2d 810.

Furthermore, the courts are not authorized to reweigh the evidence or to substitute their judgment for that of the agency even if they believe an opposite conclusion might be reasonable. (*DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 202 N.E.2d 522.) It is the duty of the administrative agency to evaluate the credibility of the witnesses. *McKey & Poague, Inc.*

The issue before us is whether the Commission's conclusion that Okino's layoff was not a "subterfuge for discharge" is against the manifest weight of the evidence. The resolution of this dispute rests primarily on the credibility of the witnesses. If Longo spoke to Schunk about a possible reorganization before he became administrator it adds significantly to his contention that there was a valid reorganization. Longo testified this in fact occurred and Schunk corroborated that testimony. On the other hand, Okino testified that Townsel said Longo told him that Okino was being fired for insubordination. Okino's testimony in this regard is impeached by Longo who denies making such a statement, and also by Townsel who denies that Longo made such a statement or that he, Townsel, told Okino that Longo had made such a statement. The weight to be accorded that testimony is a matter reserved for the trier of fact, who had an opportunity to observe the witnesses as they testified.

A significant portion of the testimony, much of it uncontradicted, supports the Commission's conclusion that Okino's layoff was not a subterfuge for discharge. Okino herself testified that Simons, Longo's predecessor in the administrator position, left because the Department

was dissatisfied with his performance. Lee described the Simons' era as "management by crisis." Based on this testimony, it would have been reasonable to expect Simons' successor, Longo, to effect some significant changes in the AFS Division.

Longo's testimony lends credence to the conclusion that there was a valid reorganization. Longo said he talked to Rowe and Schunk about a possible plan of reorganization while he was still deputy administrator, and that he thought Simons had been delegating too much responsibility to Okino. Although Schunk's memory was poor, he was relatively confident that his first conversations with Longo about a possible reorganization occurred while Longo was still deputy administrator. Longo and Okino agreed that they had few dealings with each other while he was deputy and that their personal conflicts did not occur until he became administrator.

Also significant was the uncontradicted testimony that Williams' main responsibility, involving the central intake function, was transferred to Springfield. The decision to make this change was made before Longo became deputy. Williams' job was effectively eliminated as a result of this change. Before Longo became administrator, the "professional staff" of the Division consisted of five persons: Simons, Longo, Okino, Williams and Edwards. By the end of 1976, five months after Okino's departure, only three professionals staffed the Division: Longo, Lee and Klein. This is clearly evidence from which one could conclude that a valid reorganization had occurred. As the hearing officer observed, there were two Administrative Assistants II and a deputy administrator in the Division when Longo took over as acting administrator. By the time of the hearing, the Division was operating with no Administrative Assistants II, but with only a deputy administrator.

Longo also explained his reasons for deciding to eliminate one of the Administrative Assistant II positions. The deputy administrator position was newly created at the time Longo was hired to fill it in June of 1976. He served in this capacity for just five weeks before he was named acting administrator. Longo said he decided to retain the deputy position, and he thought the duties and responsibilities which had been assigned to Okino, under Simons, should be assigned to the deputy. His decision to keep Williams rather than Okino was based on Williams' greater seniority and also on the fact that he thought Williams had greater potential.

██ In light of the testimony summarized above, we believe the Commission's conclusion that Okino was validly laid off was not against the manifest weight of the evidence. As the hearing officer noted, Longo may well have acted quickly in his plan to reorganize, and Okino's confrontations with him may well have been the catalyst, but the evidence nevertheless supports a conclusion that the reorganization was a

valid one and that Okino's layoff was not merely a subterfuge for discharge.

For the foregoing reasons the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

LINN, P. J., and JOHNSON, J., concur.