GORDON E. PIENTKA, Plaintiff-Appellee, *v.* THE BOARD OF FIRE COMMISSIONERS OF THE NORTH MAIN FIRE PROTECTION DISTRICT *et al.,* Defendants-Appellants.

First District (4th Division) No. 82—2637

Opinion filed June 21, 1984.

M. Leslie Kite and David Schachman, both of M. Leslie Kite & Associates, P.C., and Sidney M. Libit, of Libit, Lindauer & Henry, both of Chicago, for appellants.

Murphy, Mitchell & Jaffe, of Chicago (James P. Flannery, Jr., and Lee Preston, of counsel), for appellee.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Following a hearing before the board of fire commissioners of the North Main Fire ·Protection District (board), plaintiff, Gordon E. Pientka, was discharged from his position as a firefighter employed by the North Main Fire Protection District (district) on the ground that he had lied when he represented to the district and to the Industrial Commission that he had injured his back on March 6, 1979, while

on duty. Pientka filed a complaint for administrative review under the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 264 *et seq.*).

Meanwhile, in a separate proceeding before the Industrial Commission, Pientka and the district entered into a lump sum settlement contract resolving four workers' compensation claims filed by Pientka between 1976 and 1979. The trial court reversed the decision of the board and remanded the case with specific instructions to the board to consider the effect of the settlement contract on its decision to discharge Pientka. After reconsideration, the board affirmed Pientka's discharge, whereupon he filed a second complaint for administrative review. This time the trial court reversed the decision of the board in its entirety, and the board filed this appeal.

Three issues are raised on appeal: (1) whether the trial court erred in considering the settlement contract to be a judicial admission of liability on the part of the board, (2) whether the trial court erred in reversing the decision of the board as being against the manifest weight of the evidence, and (3) whether section 4(h) of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.4(h)) prevents the board from discharging plaintiff.

We reverse the decision of the trial court and affirm the decision of the board.

FACTS

The record discloses that Gordon Pientka, a firefighter employed by the district, was assigned to the 24-hour shift beginning at 8 a.m. on March 6, 1979. Also on duty that day was Firefighter Michael Bronk, who testified that by 10 a.m., Pientka was complaining that his back was bothering him. Although Pientka worked at various tasks around the fire station during the day, he complained that his back was growing steadily worse, until by 9:30 p.m. he was unable to walk. However, Bronk testified that when he suggested that Pientka go to the hospital, Pientka refused unless he could claim that he had been injured on the job so that he could claim workers' compensation benefits. When Pientka asked Bronk to support his story that he had slipped in some water on the apparatus floor, Bronk said he could not. Pientka was then taken by ambulance to Lutheran General Hospital. Nearly a year later, Pientka requested that Bronk meet him in the hospital parking lot, and he asked again if Bronk would support his story at the upcoming Industrial Commission hearing. Bronk again refused.

On March 7, 1979, the day following his treatment at the hospital,

Pientka filed his workers' compensation claim and was placed on inactive duty. He retained that status for more than a year except for a period of five weeks in 1979 when he returned temporarily to light duty. Not until the new fire chief, Walter Kelly, received a report from Pientka's doctor allowing him to return to limited duty did he begin to investigate Pientka's claim. Finally, as a result of his interview of Michael Bronk, Kelly filed formal charges against Pientka requesting that the board discharge him from his position.

Pientka's version of the incidents in question was decidedly different. He testified that at no time on March 6 had he complained about his back until after he slipped and fell late that evening. Further, he said that neither on the night he was taken to the hospital nor at the meeting a year later in the hospital parking lot did he ask Bronk to support his story, but instead simply asked if Bronk had seen him slip and fall.

On January 20, 1981, the board announced its findings and decision to discharge Pientka. Specifically, the board found that Bronk was a more credible witness than Pientka and that Bronk's version of the activities in question provided sufficient evidence to support Pientka's discharge for falsely reporting to both the district and to the Industrial Commission that he had injured his back while on duty.

Meanwhile, following the March 7, 1979, filing of Pientka's workers' compensation claim, the Industrial Commission held hearings to determine the validity of that claim and three others previously filed by Pientka. A hearing officer presided over several days of testimony, which resulted in a record of over a thousand pages. However, before the hearing officer could render his decision, he died; consequently, Pientka and the district were faced with three alternatives: (1) a new Industrial Commission hearing officer could conduct new hearings, (2) a new hearing officer could make a decision after reading the transcript and reviewing the exhibits from the original hearing, or (3) the parties could reach a settlement. Deciding that the third choice was the most expeditious, on March 30, 1981, Pientka and the district agreed to settle all four claims for a lump sum of $6,500.

The settlement contract specifically recited the following:

"[T]here are disputed questions of law and fact. The parties agreed to this settlement to avoid further litigation, believing it is fair and reasonable under the circumstances, wherein the Respondent [District] claims they have no liability whatsoever as a result of any and all claims, known or unknown, for injuries or conditions of ill-being which occurred at work."

No dollar amount was assigned to any of the four claims, and no find-

ings were made concerning their validity.

On June 24, 1981, Pientka filed his complaint for administrative review of his discharge. The trial court, believing that the settlement contract was a judicial admission by the board that Pientka had sustained an on-the-job injury on March 6 and therefore had not lied, remanded the case to the board with directions to consider the effect of the settlement on its decision. After another hearing, at which the board heard arguments on that specific issue, the board affirmed its earlier decision to discharge Pientka.

Pientka then filed his second complaint for administrative review; the trial court again reversed the decision of the board, this time stating outright that the board's approval of the settlement contract was a judicial admission of the "facts" explaining each claim as set out in the contract and characterizing the decision by the board discharging Pientka as unsupported by the manifest weight of the evidence. From the order reversing the decision of the board in its entirety, the board now appeals.

OPINION

■ The first issue to be dealt with here concerns Pientka's assertion that his discharge was unlawful because section 4(h) of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.4(h)) protects an employee from being discharged in retaliation for filing a workers' compensation claim. Our reading of the record in no way supports Pientka's claim that he was discharged for filing a claim; he was discharged for allegedly violating section 2.14 of the Rules of the North Main Fire Protection District in that he "accept[ed] salary payments from the District without working, by falsely claiming that he sustained an injury to his back on March 6, 1979 while on duty in the Fire Station of the North Main Fire Department."[1]

Section 16.13 of "An Act in relation to fire protection districts" (Ill. Rev. Stat. 1979, ch. 127½, par. 37.13) vests in the board of fire commissioners exclusive jurisdiction to investigate, hear, and decide charges against an officer or member of the fire department and to suspend, remove or discharge an officer or firefighter found guilty.

---

[1]A second charge against Pientka, that of refusing to obey an order of his superior officer, concerned his refusal to take a polygraph test covering his alleged on-the-job injury. The recent case of *Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 450 N.E.2d 314, *cert. denied* (1983), 464 U.S. 960, 78 L. Ed. 2d 335, 104 S. Ct. 391, held that a police officer may not be compelled to take a polygraph examination, nor are results of any polygraph examination admissible in any administrative hearing. Consequently, the second charge was not made part of this appeal.

The fact that the charge of lying lodged against Pientka was based on the same underlying circumstance that triggered his filing a claim with the Industrial Commission, *i.e.,* his allegation that he was injured on the job on March 6, 1979, does not alter the fact that the disciplinary action taken by the district was a direct result, not of his filing a workers' compensation claim, but of his making what was determined to be a false statement to his superior officer and thereby collecting his salary for more than a year without working.

While the Industrial Commission provides the exclusive means by which covered employees may recover *damages* from their employers for work-related injuries (*Ferguson v. Roundtable Motor Lodge* (1980), 83 Ill. App. 3d 331, 404 N.E.2d 1039), it has no jurisdiction over disciplinary measures taken by an employer against an employee who violates specific rules governing his job. In the case of firefighters, the statutorily granted right to discipline is in the hands of the local board of fire commissioners, which makes its own determination of any charges brought against an officer or firefighter. The gravamen of the charge filed before the board was Pientka's claim to an on-the-job injury and his subsequent acceptance of this salary without working for nearly a year. Therefore, we find meritless Pientka's contention that he was discharged for exercising his right to file a workers' compensation claim.

## II

■ The second issue raised on appeal concerns the propriety of the trial court's consideration of the settlement contract as a judicial admission by the district. Pientka claims that by signing the contract, which is also a petition to the Industrial Commission to enter the agreed-upon sum as a judgment order against the district, the district "admitted" as true all the statements contained in the contract, including those listing each injury and the date of its occurrence. The board, on the other hand, points to the specific disclaimer of liability quoted above as proof that the district's signing the contract was not an admission of any "fact" contained in the settlement. We agree with the board and specifically find that as the contract was not a judicial admission, the trial court improperly considered it when reversing the board's decision to discharge Pientka.

In support of his argument that the settlement contract constituted a judicial admission, Pientka cites *Bassi v. Morgan* (1965), 60 Ill. App. 2d 1, 208 N.E.2d 341, in which an application for exclusive workers' compensation benefits was held to be an evidentiary admission that the applicant was injured in the course of her employment

and therefore was limited to seeking recovery under the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*). This evidentiary admission precluded plaintiff from maintaining a separate claim for damages against the defendant on the ground that she was a nonpaying guest passenger in defendant's automobile.

Another case, discussed by the board but not cited by Pientka, is *Korleski v. Needham* (1966), 77 Ill. App. 2d 328, 222 N.E.2d 334, in which an Industrial Commission settlement contract between a decedent's widow and his employer was properly admitted into evidence as an admission against the employer's interest in another suit. In a related suit brought against the employer by another party injured in the same automobile accident, the settlement contract was held to be sufficient evidence to establish a *prima facie* case of an agency relationship between the employer and the decedent.

Although the above cases bear some similarity to the present case, we find that neither supports Pientka's position, adopted by the trial court, that the settlement contract constitutes a judicial admission of the truth of every entry relating to Pientka's four claims.

In *Bassi*, the document involved was an application by the plaintiff for workers' compensation benefits, a direct contradiction of the statement in her complaint at law alleging that at the time of the accident she was not engaged in her employment. Clearly, the issue was the status of the plaintiff at the time of the accident, and the appellate court ruled that the application should have been admitted as *some evidence* of her status. However, the application was not admitted for any reason related to the merit of plaintiff's claim for damages.

In *Korleski*, the settlement contract itself was properly admitted, not as an admission of any of the facts relating to the decedent's widow's claim, but only as *some evidence* of the principal-agent status of the decedent and his employer, the defendant. In both these cases, the major issue concerned the status of one of the parties and its effect on either the forum for recovery or the identity of the real party in interest. In neither case was the Industrial Commission document used to prove a fact relating to the claimed injury itself.

In contrast, in the instant case the trial court used the settlement contract not as *some* evidence but as *dispositive* evidence of the truth of one of the claims filed with the commission. Further, this use was in direct contravention of the disclaimer language agreed to by both parties. Indeed, at one of the many hearings involved in this case, Pientka's attorney agreed that the settlement contract contained no findings of fact, a position directly contradictory to the one he has

taken in this appeal.

■■■ We hold that the use of the settlement contract as evidence of the truth of any of Pientka's claims for workers' compensation recovery was error. A settlement agreement between two parties cannot be used as an admission of liability against one of them in a related suit. (*Hill v. Hiles* (1941), 309 Ill. App. 321, 32 N.E.2d 933.) Further, the disclaimer was part of the bargain entered into by Pientka and the district, and therefore it is effective according to its terms. (See *Gideon Service Division v. Dunham-Bush, Inc.* (1980), 80 Ill. App. 3d 633, 400 N.E.2d 89.) Finally, even if the disclaimer were not effective, the fact that no dollar amount was assigned to any of the four claims prevents any conclusion that each claim was found to be meritorious. "A compromise settlement as represented by the lump-sum settlement contract may not be determinative of the merits of an employee's claim under the Workmen's Compensation Act." (*Hammond v. Prudential Insurance Co. of America* (1966), 75 Ill. App. 2d 15, 18, 220 N.E.2d 26.) The listing of the claims in the body of the form contract merely set out which claims were being disposed of, nothing more and nothing less.

### III

Last, the board maintains that the trial court erred in reversing its decision to discharge Pientka because the board's decision was not against the manifest weight of the evidence. We agree.

The sole issue before the board was a factual one: whether the evidence indicated that Pientka had lied about injuring his back when he slipped in water on the fire station floor and fell. In reviewing an administrative decision, the trial court must accept as *prima facie* true and correct the agency's findings and conclusions on questions of fact. (Ill. Rev. Stat. 1983, ch. 110, par. 3—110.) The function of the reviewing court is limited to determining whether the decision of the administrative agency is contrary to the manifest weight of the evidence, which means that an opposite conclusion must be clearly evident. (*Pryka v. Board of Fire & Police Commissioners* (1978), 67 Ill. App. 3d 210, 384 N.E.2d 784.) Where it appears that there is evidence to support the findings of the agency, its decision should be affirmed. *Okino v. Department of Corrections* (1980), 84 Ill. App. 3d 1084, 405 N.E.2d 1369.

■■ Pientka argues that the board should have accepted his unrebutted testimony that he fell and injured himself while at work. However, the board heard sufficient testimony from Firefighter Bronk to support its decision. Conflicts in testimony focus on the credibility of

the witnesses and are to be resolved by the agency that heard the evidence and observed the witnesses. (*Keen v. Police Board* (1979), 73 Ill. App. 3d 65, 391 N.E.2d 190.) "The trier of fact is not required to believe the testimony of an interested witness merely because it is uncontradicted." (*Davies v. Arthur Murray, Inc.* (1970), 124 Ill. App. 2d 141, 260 N.E.2d 240.) Pientka's testimony before the board was not found to be credible. Because we cannot say that an opposite conclusion is clearly evident (*Carlisi v. Liquor Control Com.* (1969), 116 Ill. App. 2d 350, 359, 253 N.E.2d 560, 565), we reverse the decision of the trial court and affirm the board's discharge of Gordon Pientka.

Reversed.

JOHNSON and JIGANTI, JJ., concur.