SIXTH DIVISION
May 23, 2008

No. 1-06-0532

ADDISON GROUP, INC., an Illinois      )   Appeal from the
Corporation,                          )   Circuit Court of
                                      )   Cook County
          Plaintiff-Appellant,        )
                                      )
     v.                               )
                                      )
RICHARD M. DALEY, as Mayor of the City )
of Chicago and Local Liquor Control   )
Commissioner; THE LOCAL LIQUOR CONTROL )
COMMISSION OF THE CITY OF CHICAGO; THE )
MAYOR'S LICENSE COMMISSION OF THE CITY )
OF CHICAGO; WINSTON L. MARDIS, and SCOTT)
V. BRUNER, as his successor, as       )
Director of the Mayor's License       )
Commission of the City of Chicago; THE )
CITY OF CHICAGO, a Municipal          )
Corporation; THE LICENSE APPEAL       )
COMMISSION OF THE CITY OF CHICAGO;     )
ANTHONY CALABRESE, as Chairman of the  )
License Appeal Commission, IRVING KOPPEL)
and DONALD ADAMS, as Commissioners of  )
License Appeal Commission,            )   Honorable
                                      )   Anthony Young,
          Defendants-Appellees.       )   Judge Presiding


     JUSTICE McNULTY delivered the opinion of the court:

     The Local Liquor Control Commission (the Commission) suspended Addison Group's liquor license for 30 days as a sanction for serving alcohol to a minor.  On appeal Addison contends that the Commission should not have considered fines Addison voluntarily paid in the past as part of its disciplinary history.  We hold that the voluntary payment of fines is evidence, admissible in administrative proceedings, that the payer committed the violation charged.  Evidence of a corporate

licensee's violation remains admissible after a new owner purchases the licensee. In light of the disciplinary history, the Commission did not abuse its discretion by imposing a 30-day suspension as a sanction for the latest violation.

BACKGROUND

On December 18, 2001, Lisa Schwarz, then 18 years old, walked into Okocim, a tavern that Addison Group owned. She sat down at the bar and asked the bartender, Katarzyna Sczepzek, for a Miller Light. Sczepzek, in her second week of work for Addison, did not ask to see any identification. She opened a bottle of Miller Light beer and set it and an empty glass in front of Schwarz. Schwarz handed Sczepzek a marked $10 bill. Sczepzek put the bill in the cash register and tendered Schwarz her change.

Schwarz worked for the Chicago police department's program intended to stop taverns from selling alcohol to minors. Officer Dusan Puhar, who observed the transaction, charged Addison Group with selling alcohol to a minor. The Commission conducted hearings on the charges in 2002.

Schwarz testified that she carried no identification with her when she went to the tavern. Puhar spoke to Sczepzek immediately after she handed Schwarz her change. Puhar testified that he saw Addison's owner, Gus Giannakopoulos, sitting at a

-2-

table in the tavern during the sale to Schwarz.

Adam Maliszewski testified for Addison that he saw the sale to Schwarz. Right after Sczepzek gave Schwarz the beer Sczepzek came to Maliszewski to ask him, in Polish, how to ask the customer, in polite English, for identification. Maliszewski told her the correct English. As Sczepzek returned to the bar to ask to see Schwarz's identification, Puhar and other officers swarmed the bar while Schwarz showed her police identification. The officers began the process of charging the bar with selling alcohol to a minor.

Several other regular patrons testified that the bartenders always asked to see identification from anyone entering the tavern. Okocim had a fine reputation in the community as a well-run, law-abiding business.

Giannakopoulos testified that he purchased Addison in January 1991. He made sure all of the bartenders knew how to ask, in English, for proper identification. He had just stepped away from his table in the tavern moments before Schwarz entered the tavern.

Margaret Kaczmarszi testified that she trained all the bartenders, including Sczepzek, to ask for identification. Because most of the bartenders spoke Polish, she taught them the correct English for asking for identification.

The hearing commissioner accepted into evidence a letter showing that Addison had passed five separate tests for sales to minors between June 1997 and December 2000. On each occasion a minor came into the tavern and ordered alcohol, but the bartender asked for identification and refused to sell the alcohol when the minor failed to produce acceptable identification.

The hearing commissioner also accepted in evidence several orders of disposition showing that Addison voluntarily paid fines to dispose of several charges brought against it. In 1990 Addison paid $200 to dispose of a charge related to an aggravated battery at the tavern. In 1992, about a year after Giannakopoulos bought Addison, Addison paid a fine of $400, not contesting a charge of gambling at the tavern. In August 1998 Addison, charged with failing to display tax emblems, voluntarily paid a $1,000 fine. Prosecutors charged Addison with permitting gambling in the tavern on two separate occasions, once in December 1999 and again in February 2000. To dispose of these charges Addison agreed to suspend operations for 17 days in August 2000. For each charge brought after 1991, Giannakopoulos signed a form in which he said he had "thoroughly discussed the incident(s) and [had] been afforded the opportunity to present any or all facts concerning the incident(s), either orally or by way of affidavit." He waived the right to a hearing and

1-06-0532

voluntarily agreed to accept the penalty the Commission sought to impose.

Giannakopoulos began to explain why he agreed to the suspension in 2000. The hearing commissioner disallowed the testimony. In an offer of proof, Giannakopoulos explained that he had put $5 in a slot machine, but no one had actually gambled. He accepted the suspension to avoid the hassle of a trial.

The hearing commissioner found Schwarz and Puhar credible, and he disbelieved much of Maliszewski's testimony. Thus, he found that Addison had served alcohol to an 18-year-old person without checking for identification. In light of the prior disciplinary history, the commissioner found a 30-day suspension appropriate. The Commission adopted the hearing commissioner's findings and suspended Addison's liquor license for 30 days.

Addison appealed to the circuit court. The court affirmed the Commission's ruling. Addison now appeals to this court.

ANALYSIS

Addison first challenges the decision to admit into evidence documents showing that Addison voluntarily paid fines associated with prior charges. Rule 9(b) of the Rules of Procedure for Contested Hearings before the Department of Business Affairs and Licensing and Local Liquor Control Commission provides:

"The rules of evidence and privilege as applied in

civil cases in the circuit courts of the State of Illinois shall be followed.  However, evidence not admissible under such rules of evidence may be admitted if it is a type commonly relied upon by prudent persons in the conduct of their affairs.  The purpose of rulings on evidence shall be to promote the finding of truth and to seek the greatest accuracy in the determination of facts.  Pursuant to <u>Childers v. Illinois Liquor Control Commission</u>, 67 Ill. App. 2nd 107 (3rd Dist. 1966), a licensee's prior history shall be admitted at any time during the hearing for purposes of aggravation or mitigation, but will only be considered for those purposes if one or more of the charges in the Notice of Hearing are sustained.  Facts underlying prior orders of disposition may not be relitigated."

We will not reverse the Commission's evidentiary ruling unless the Commission abused its discretion and the ruling demonstrably prejudiced the objecting party.  See <u>Wilson v. Department of Professional Regulation</u>, 344 Ill. App. 3d 897, 907 (2003).

Addison argues that it voluntarily settled prior charges and the Commission should not consider settlements as evidence that Addison committed the charged misconduct.  See <u>Pientka v. Board</u>

1-06-0532

of Fire Commissioners of the North Main Fire Protection District,
125 Ill. App. 3d 124, 129 (1984). Voluntary payment of a fine
bears some characteristics of a civil settlement, but it seems
more nearly akin to a plea of *nolo contendere*. Illinois courts
do not recognize a plea of *nolo contendere*, so Illinois has
little law on the effect of such a plea. People v. Miller, 264
Ill. 148, 154 (1914).

> "Turning to the views of other jurisdictions, we
> find that it is generally recognized that a plea of
> *nolo contendere* cannot be used as an admission in any
> civil suit for the same act nor in a later criminal
> proceeding. [Citation.] On the other hand the effect
> and admissibility of a conviction under such a plea is
> the subject of much discussion and widely divergent
> points of view. Some jurisdictions, such as
> Massachusetts, flatly prohibit proof of conviction on
> the plea [citation], while others hold that the fact of
> conviction may be shown with the same consequences as
> if the conviction were after a plea of guilty or not
> guilty." In re Eaton, 14 Ill. 2d 338, 341-42 (1958).

Many courts admit evidence of a prior adjudication based on a
plea of *nolo contendere* in deciding the proper sanction to impose
for a more recent infraction. See, *e.g.*, United States ex rel.

1-06-0532

<u>Clark v. Skeen</u>, 126 F. Supp. 24, 26 (N.D. W. Va. 1954); <u>State v. Crowe</u>, 168 S.W.3d 731, 748 n.20 (Tenn. 2005); <u>Texas Department of Public Safety v. Richardson</u>, 384 S.W.2d 128, 132-33 (Tx. 1964); <u>People v. Daiboch</u>, 265 N.Y. 125, 129, 191 N.E. 859, 860 (1934); <u>State v. Suick</u>, 195 Wis. 175, 177-78, 217 N.W. 743, 744 (1928).

Here, Addison did not plead *nolo contendere*. It voluntarily paid fines and accepted a suspension, but it never formally admitted the facts underlying the charges for which it accepted these sanctions. Courts have not treated uniformly the voluntary payment of fines. Some courts have held evidence of the voluntary payment inadmissible in a later case because the accused did not admit the underlying facts. See, *e.g.*, <u>Hannah v. Ike Topper Structural Steel Co.</u>, 120 Ohio App. 44, 47, 201 N.E.2d 63, 65 (1963); <u>Waszczak v. City of Warner Robbins</u>, 221 Ga. App. 528, 529-30, 471 S.E.2d 572, 574-75 (1996). Other courts have held that the accused effectively admitted to the underlying offense. See <u>Wilson v. Burke</u>, 356 Mo. 613, 202 S.W.2d 876 (1947); <u>Krystal Jeep Eagle, Inc. v. Bureau of Professional & Occupational Affairs</u>, 725 A.2d 846, 850 (Pa. Commw. 1999); <u>Kravis v. Hock</u>, 54 A.2d 778 (N.J. 1947).

Some courts have held that the voluntary payment qualifies as rebuttable evidence of the charged violation. "[A] voluntary payment of fine and costs is evidence of the violation. However,

-8-

it is not conclusive and does not foreclose an inquiry into defenses and the guilt of the violation underlying the revocation." <u>Bruce Appeal</u>, 41 Pa. D. & C.2d 195, 196 (1966).

In <u>Chodorov v. Eley</u>, 239 Va. 528, 391 S.E.2d 68 (1990), Eley's automobile struck the rear of the car in which Chodorov rode as a passenger. Eley voluntarily paid a fine to dispose of a charge that he followed too closely the car he hit. Chodorov sued Eley for negligence. The trial court allowed Chodorov to introduce evidence of the fine, but it also permitted Eley to explain that he paid the fine to keep from having to take time off from work. The jury found Eley not liable for the accident. The appellate court affirmed, holding that by voluntarily paying the fine Eley did not judicially admit to following too closely:

> "Although the jury reasonably could have found
> from this evidence that Eley, by paying the fine
> voluntarily, had acknowledged that he was following too
> closely, the jury also reasonably could have found that
> Eley paid the fine to avoid the inconvenience and
> expense of contesting the charge." <u>Chodorov</u>, 239 Va.
> at 532, 391 S.E.2d at 71.

In <u>People ex rel. Attorney General v. Edison</u>, 100 Colo. 574, 69 P.2d 246 (1937), a lawyer pled *nolo contendere* to a charge of perjury. That plea did not estop the lawyer from relitigating

1-06-0532

the perjury charge in a subsequent disciplinary proceeding.

In Ayala v. Department of Professional Regulation, 478 So. 2d 1116 (Fla. App. 1985), Dr. Louis Ayala pled *nolo contendere* to a charge of submitting fraudulent insurance claims. Following a hearing before the Board of Medical Examiners, the Department of Professional Regulation suspended Ayala's license as a result of the plea in the criminal action. On appeal the court held:

> "[T]he Board of Medical Examiners may presumptively consider the nolo contendere plea as evidence of a conviction ***; however, *** the Board must allow appellant the opportunity to rebut this presumption and assert his innocence of the underlying criminal charges by explaining the reasons and circumstances surrounding his plea of nolo contendere, and thereby attempt to convince the Board that he is not guilty of a crime."

> Ayala, 478 So. 2d at 1118-19.

The court reversed the suspension and remanded the case for the Board to consider evidence concerning Ayala's reasons for his plea and for presentation of any further evidence concerning his guilt on the charge of insurance fraud.

We find that prudent persons would see voluntary payment of a fine for a violation as evidence that the payer committed the violation charged. Under the rules for evidence in hearings

-10-

before the Commission, as in other administrative proceedings (see 5 ILCS 100/10-40(a) (West 2002)), the administrative body may admit into evidence documents showing that a party voluntarily paid such a fine. Courts have persuasively held that the voluntary payment should not preclude the payer from presenting evidence that he did not commit the underlying violation. However, the Commission's rules expressly prohibit litigation of facts underlying the prior disposition orders. Here the hearing commissioner, following the Commission's rule, disallowed Giannakopoulos's testimony concerning his reasons for paying the fines and his defenses to the underlying charges for past violations. The hearing commissioner did not abuse his discretion by admitting the evidence of the voluntary payments as part of Addison's disciplinary history.

Addison separately objects to evidence of the 1990 voluntary payment of a fine because Giannakopoulos did not own Addison at that time. Addison, a corporation, is a legal person, and sale of the corporation to a new owner usually does not affect the corporation's liabilities. Sinquefield v. Sears Roebuck & Co., 209 Ill. App. 3d 595 (1991). Addison holds the liquor license and the Commission decided only a charge that Addison, not Giannakopoulos, violated the conditions of the license. The trial court here held:

"[T]he consequence of a ruling that Addison Group suggests would permit a corporate licensee to disavow prior bad behavior by a mere change of ownership. Such a decision would inevitably stymie the [Commission's] efforts in policing those who are precluded from holding a liquor license."

We agree that a corporate owner should not use a sale to avoid the consequences of past misconduct, especially where evidence shows an intent to use the sale to avoid such consequences. The Commission might consider a change in ownership as a mitigating circumstance, where the current owner did not participate in past violations. See Beer & Brat, Inc. v. Liquor Control Comm'n, 44 Ill. App. 3d 713, 715 (1976). However, the Commission here correctly considered prior misconduct by the corporate licensee in assessing the penalty to impose on the corporation for the new violation.

Addison asks us to reverse the suspension as unduly harsh. Addison argues that its owner, Giannakopoulos, neither knew of nor ratified Sczepzek's conduct, as Giannakopoulos had left the tavern a few minutes before Schwarz entered and ordered a beer. Puhar testified that he saw Giannakopoulos at his table in the tavern at the time Schwarz ordered the beer. On this conflicting evidence we cannot make any factual findings as to

1-06-0532

Giannakopoulos's presence.

Addison cites <u>Hanson v. Liquor Control Comm'n</u>, 201 Ill. App. 3d 974 (1990), and <u>Jacquelyn's Lounge, Inc. v. License Appeal Comm'n</u>, 277 Ill. App. 3d 959 (1996), as support for the claim that the Commission imposed too harsh a penalty. In both of those cases the Commission revoked the tavern's license. While we might find revocation too harsh a penalty here, too, the Commission here did not impose that penalty. It imposed only a 30-day suspension, justified by the history of progressive discipline for a series of violations. We cannot say that the Commission abused its discretion by imposing this progressive discipline.

The Commission correctly considered voluntary payments as evidence that Addison committed the violations charged. The Commission also correctly took into account a violation that occurred before a change in Addison's ownership. In light of the disciplinary history, we cannot say that the Commission abused its discretion by suspending Addison's license for 30 days. Accordingly, we affirm the judgment of the trial court, which affirmed the Commission's decision.

Affirmed.

JOSEPH GORDON and O'MALLEY, JJ., concur.